FLOSSIE STILSON, Appellee, v. A. C. ELLIS et al., Appellants.

No. 39488.

MAY 7, 1929.

REHEARING DENIED SEPTEMBER 30, 1929.

*Blythe, Markley, Rule & Clough,* for appellants.

*H. H. Uhlenhopp,* for appellee.

KINDIG, J.—Plaintiff-appellee and her husband, who is a farmer, lived near Hampton. They, together with their neighbors, Mr. and Mrs. Anderson, drove from their homes in a four-door Ford sedan on the morning of November 9, 1926, for the purpose of attending a funeral near Armstrong. A relative of the husband of appellee had died. The Ford sedan belonged to appellee's husband, and, on the occasion under consideration, was being driven, controlled, and managed by him. On this trip, appellee, with Mrs. Anderson, rode in the back seat, and the two men were in front. This party of four left their homes north of Hampton at about 7:30 in the morning, and, according to their testimony, reached the scene of the accident (which was about a mile and one half west of Clear Lake) at approximately 8:30. According to appellee's evidence, the journey was made at a rate of speed never exceeding 30 miles an hour, and while passing through towns, the rate was diminished to meet the occasion.

When leaving Clear Lake, the Ford car in which appellee was riding followed a paved highway, about 18 feet wide. That thoroughfare extended in a general northeasterly and southwesterly direction from that town to the place of collision with appellants' Buick automobile. During this journey, appellee's husband drove on the right-hand side of the road. Thus they were proceeding when the appellant A. C. Ellis suddenly drove northward from his private driveway on the north side of the lake onto the highway in front of the on-coming Ford car in which appellee was riding. Necessarily there was an impact,

and, as a result thereof, appellee received the injuries of which she now complains, and her husband's automobile was damaged. His right of action growing out of the impairment to the automobile was assigned to appellee.

Errors are assigned by appellant because the court submitted plaintiff's case to the jury, gave erroneous instructions, refused others that should have been given, and wrongfully admitted and excluded evidence. Appellants ask a new trial, therefore, and for the further reasons that appellee's witnesses wrongfully referred to liability insurance, and impermissible argument was made by appellee's attorney.

. I. There is a challenge made by appellants that the evidence is not sufficient to establish their negligence. Hence, the first problem confronting us for solution is to determine whether the appellee met the burden of proof in this respect.

Allegations of negligence made by appellee against the appellants, and therefore submitted by the court to the fact-finding body, were: Did the appellant A. C. Ellis, first, fail to stop the automobile which he was driving, before passing upon the main paved public highway; second, fail to look for other vehicles passing or approaching; third, fail to give the right of way to the automobile in which appellee was riding; fourth, fail to have said Buick automobile under proper control, so that he was unable to stop or turn the same when the collision was imminent; fifth, carelessly drive across said public highway to the north and left-hand side thereof directly in front of the automobile in which appellee was riding, so close thereto that the driver thereof could not turn and avoid the collision?

If appellee's evidence was such that there was legal support for the jury's verdict based thereon, then there was no error at this juncture.

In *Kern v. Kiefer,* 204 Iowa 490, it is said that the defendant is not entitled to a directed verdict unless "* * * by giving the opposite party the benefit of the most favorable view of the evidence the verdict against him is demanded."

See, also, *Grohe v. Jackson,* 195 Iowa 705; *Howard v. First Nat. Bank,* 192 Iowa 432. Conflicting testimony produced by the appellants does not change the rule under the circumstances here involved. It is for the jury to say whether the preponderance of the evidence is with the appellee or the appellants. If we give

to the appellee, then, as we must, the most favorable view of her evidence, it is necessary to hold that the court was justified in submitting each of the foregoing issues of negligence to the jury, and in refusing to withdraw any one of them from the consideration of that body. Rehearsal of the material facts will demonstrate the correctness of this pronouncement.

Homer Stilson, appellee's husband, said that, immediately before the accident, he was driving 15 or 20 miles per hour, on the proper side of the pavement. Some obstruction to the driveway in question was caused by a garage to the east thereof. Therefore, appellee's husband did not see appellant A. C. Ellis in the Buick until the Ford was about 40 steps east of the point in question. Ellis then was "just coming out on his driveway up onto the pavement. He wasn't quite up to the pavement."

"Q. What was the condition of the road? A. Icy. Q. When you first saw Mr. Ellis first coming out of the driveway, what did you do? A. I put on my brakes a little, to slow down. Q. What, then, did Mr. Ellis do? A. Well [he slowed down] I thought he was going to stop. * * * I took my brakes off. That was before he was on the pavement. * * * I took my brake off, and started to go again, and went * * * about half the distance. Q. And then, after you started up again, what did Mr. Ellis do? A. Well, after I took my brakes off and started to go again, he came out on the pavement. He drove clear over on the right-hand side, at a kind of an angle. Instead of coming up on his own side, he made a big circle, and came on my side of the road,—the right-hand side. * * * His front wheels would be about three feet from the north edge of the pavement. * * * I was just right on top of him. I was going [to turn to the left], but there was a car coming [behind Ellis, from the opposite direction]. I couldn't do that, so I just put on my brakes, and threw the rear end into him. Q. Had you seen this other car before this? A. No; there was a corner there, just a little way behind there. Q. How close were you * * * to the Ellis car [when you threw on your brakes and turned to the right]? A. I suppose maybe 10 feet, or 15."

Apparently there was a trailer on the back of the Ellis car, but the car itself was approximately 18 feet long. Furthermore, it seems that the Buick had not been kept in a garage the night

before, but stood out in the cold weather, and consequently did not run well while it was being warmed up. Witnesses for appellee say that Mr. Ellis apparently was having trouble with his car, and while approaching and afterwards, while upon the pavement, he had "one hand on the steering wheel and the other on the gears," and "he was looking down at the gears." Description of the manipulation is made by appellee's witnesses in these words: "The Buick was running wild." A. C. Ellis himself said:

"Then I got around where I should be, and stopped. I might have just rolled along. Just let her go a little bit."

Obviously it appears also that the Buick was not under control, and the driver had difficulty in getting it back to its proper side of the pavement. Inconsistency appears, in a place or two, between the statements made by appellee's husband and those made by Mr. Anderson, who was riding with him. Yet, on the whole, they are not fatally irreconcilable. Throughout this period of time, appellee, as before stated, was in the rear seat, watching the ditch near the side of the pavement, and she did not see the Buick until her husband's Ford was right upon it. Other facts and circumstances are revealed in the record which corroborate appellee and her witnesses. No attempt has been made to mention all of them.

Clearly, then, there was evidence in the record to substantiate each and all of the allegations of negligence submitted to the jury by the court. Undoubtedly the jury had a right to find that A. C. Ellis did not stop his car or look before entering upon the highway; that he was having trouble with the machine, and did not have it under control; that he gave appellee's husband the right to understand he would stop, and then suddenly went forward again; that the Ellis car not only went upon the pavement, but on the left-hand side thereof, in such a way as to obstruct the Ford car in which appellee was riding: and furthermore, the fact-finding body could properly conclude this was all done so suddenly that appellee's husband did not have any warning thereof. Plainly, the result of the jury's verdict indicates they believed the appellee and her witnesses. That being true, there was a foundation for saying appellants were negligent. Resultantly, they were not entitled to a directed verdict or the

withdrawal of any of the issues heretofore mentioned, and the trial court properly submitted the cause to the jury. See *Olson v. Shafer*, 207 Iowa 1001. Parenthetically, it is here noted that the testimony of appellee and her witnesses was in many respects disputed and contradicted by the statements of appellants and their witnesses. Thereby a jury question arose; but, as that body made a finding of facts, we cannot interfere with its action in so doing.

II. But appellants urge that appellee was guilty of contributory negligence, as a matter of law, and therefore she cannot recover. Manifestly, there is no merit in this contention. The trial court was justified, under the record, in submitting to the jury all questions touching upon appellee's contributory negligence. She, as before related, was riding in the back seat of the Ford, watching the ditch along the roadway, and did not see, nor does it appear that she could have seen, A. C. Ellis driving the Buick from the driveway, until the collision was unavoidable. By its verdict the fact-finding body determined that appellee was free from contributory negligence.

III. Nevertheless, appellants insist that appellee's husband was guilty of contributory negligence, and therefore that portion of the assigned claim based on damages to his Ford car should not have been submitted to the jury. They say appellee's husband should have seen the Buick proceeding through the driveway, and moreover, that there was ample opportunity to stop the car in which appellee was riding, and thus avoid a collision with appellants' automobile. To a large extent, the previous discussion relating to the facts bearing upon appellants' negligence is material, and should, by reference, be reconsidered here. At least two facts require that the jury pass upon the question relating to the contributory negligence of appellee's husband. One is the act of A. C. Ellis in pretending he was going to stop the Buick car and then suddenly starting forward. Doubtless, if it had not been for such conduct on the part of that appellant, appellee's husband would have brought the Ford to a stop before the impact. After the hesitation of A. C. Ellis, as before described, the driver of the Ford released his brake, and started forward again, thinking it was intended for him to pass. Then, in the second place, appellee's husband had a right to assume that A. C. Ellis would drive the Buick on the right side of the

pavement. Had he done this, there would have been no collision. So, in the manipulation of the Ford, the driver thereof would not know there was any danger until Mr. Ellis drove north of the center line on the pavement. When that point was passed by the Buick, the Ford was so near that the accident was inevitable.

Wherefore, it cannot be judicially said the effect of appellee's husband's act so conclusively reveals his contributory negligence that the same is "apparent to every fair-minded and reasonable man, so but one conclusion may be fairly drawn therefrom." *Murphy v. Iowa Elec. Co.*, 206 Iowa 567.

IV. However, appellants further assert that their act was not the proximate cause of the injury and damage, but rather, the ice on the pavement produced the result of which complaint  is made: that is, the collision would have happened, according to their theory, regardless of A. C. Ellis's negligence. All the authorities cited by appellants on this proposition relate to facts clearly distinguishable from those in the case at bar. Reliance is made by them upon *Barrett v. United States R. Adm.*, 196 Iowa 1143; *Slater v. T. C. Baker Co.*, 261 Mass. 424 (158 N. E. 778); *The Milwaukee Bridge*, 15 Fed. (2d Ser.) 249; *Gibson v. International Tr. Co.*, 177 Mass. 100 (58 N. E. 278); *Teis v. Smuggler Mining Co.*, 85 C. C. A. 478 (158 Fed. 260); *Orton v. Pennsylvania R. Co.*, 7 Fed. (2d Ser.) 36; *Hickey v. Missouri Pac. R. Corp.*, 8 Fed. (2d Ser.) 128.

Here both parties knew there was ice on the pavement, and, under the record, appellee's husband manipulated his automobile accordingly. Evidence was introduced to the effect that the Ford could have been stopped, regardless of the ice, had the movements of appellants' Buick been understood. Regardless of this, if A. C. Ellis had kept the Buick car on the right side of the road, there would have been no need for making a stop; and hence the slippery condition of the pavement has nothing at all to do with the incident. The cases cited involve facts where a stop was necessary in any event, but some signal or notification was not given, concerning the approach of a train or other object. Under those facts, it is said that, even though warning had been properly made, nevertheless there would have been an accident, because the vehicle in which plaintiff was riding could not

have been stopped, due to ice or some other slippery condition of the street. But that is not the situation in the present controversy, because here a stop on the part of the Ford car was not essential, except for appellants' negligence. Error on the part of the trial court does not appear at this point.

V. Complaint is also made because the trial court copied portions of the pleadings into the instructions. These items thus alleged to have been copied, relate to appellants' purported negligence and the extent of appellee's injuries.

Judicial condemnation has been made of the practice adopted by some trial courts in copying large portions of the pleadings not sustained by the proof, and thus resulting in prejudice to a  party involved. Presented here, however, is not a situation of that kind; for, in this instance, the statement in reference to the negligence, as well as that relating to the injuries, was compact, concise, and brief. Each item thereof was substantially proven. Embellishments or inflammatory words were not utilized. Necessarily, then, there was no prejudice in this regard.

VI. Grievance is founded upon the thought that the court erroneously refused to give the jury appellants' requested instructions. When passing on the motion for a new trial, the district court found that these requested instructions were not timely presented. In any event, so far as material, the substance of these instructions was incorporated within other charges which were given. Thus appellant was not prejudiced, and has no just cause for complaint.

VII. Objection is made because the district court did not permit the jury to find that the negligence of appellee's husband, if any, was imputable to her, on the theory that she was  engaged with him in a joint enterprise. Basis for this assignment of error does not appear in the record. This Ford car belonged, not to appellee, but to her husband. He drove, managed, and controlled it. Consequently, appellee was no more than his guest, riding with her husband at his invitation, to the funeral of his relative. *Withey v. Fowler Co.*, 164 Iowa 377; *Barrett v. Chicago, M. & St. P. R. Co.*, 190 Iowa 509; *Johnson v. Des Moines City R. Co.*, 201 Iowa 1044; *Cram v. City of Des Moines*, 185

Iowa 1292; *Lawrence v. City of Sioux City*, 172 Iowa 320; *Wagner v. Kloster*, 188 Iowa 174.

VIII. Exception is taken by appellants to the action of the trial court in submitting to the jury the question regarding appellee's permanent injuries. Serious injuries were amply shown.  Appellee lost 30 pounds in weight. She is unable to do her ordinary duties. Her muscles and ligaments were torn, bones were probably fractured, and her spine, according to the X-ray exhibits and other evidence, was injured and hurt. From the history of the case and the testimony of the doctors, when fairly considered, it is apparent that there was evidence upon which to submit this issue to the jury. *Pettermann v. City of Burlington*, 170 Iowa 555; *Smith v. City of Sioux City*, 119 Iowa 50; *Evans v. Elwood*, 123 Iowa 92.

IX. Moreover, it is said by appellants that there was no proof that the "superior ramus of the pubis" was injured. Consideration of the record, however, reveals that one expert witness did testify that the X-ray showed a fracture of said bone in appellee's body. Immediately after the injury, appellee suffered pain in the pelvic region, and the doctors treated her for that difficulty. Before the accident, appellee had no trouble with that part of her anatomy. After reading all the record, we are constrained to hold that this question was properly given to the jury.

X. Vigorous argument is made by appellants on the proposition that the court erred in defining "contributory negligence" for the jury. Mistake, they say, arises from the statement of the  court to the effect that contributory negligence is such as proximately causes the injury. Had the court confined that charge to "proximate" alone, as distinguished from a contributing cause, there would have been error. *Towberman v. Des Moines C. R. Co.*, 202 Iowa 1299. Such condemned definition, however, was not given by the trial court in the present controversy. Rather than so doing, the court below defined contributory negligence to be such negligence as contributes "in any degree" directly or proximately to the injury of which complaint is made. Therefore, the trial court in effect said that appellee's contributory negligence, in order to defeat her recovery, need not be the proximate, but merely a contributing, cause thereof.

Also, in associate paragraphs, the district court reiterated the thought in other charges, as, for illustration, the following:

"Number 4. In order to recover, * * * it is essential that the plaintiff prove, by a preponderance or the greater weight of the evidence, * * * that * * * [she] was not herself guilty of contributory negligence in any manner or degree proximately contributing to such injury and collision."

"Number 5. * * * In order to receive anything for damages to the car of H. A. Stilson [plaintiff-appellee's husband], it is essential that the plaintiff prove by a preponderance or greater weight of the evidence * * * that the said H. A. Stilson was not guilty of contributory negligence in any manner or degree proximately contributing to the injury to said Ford automobile."

"Number 12. The plaintiff [appellee] cannot recover in this action unless it is affirmatively shown that she was free from any negligence on her part contributing to the injury * * *."

Again, in Instruction 13, the court said there would be no contributory negligence on the part of appellee's husband in driving the Ford car in excess of 20 miles per hour "unless * * * such speed was the proximate cause of the collision and injury, or *in some degree contributed thereto*" (the italics are ours). Thus, in fact, the court said that the appellee could not recover if said contributory negligence was the proximate cause of the injury; nor could she succeed if such negligence in some degree contributed thereto. Either alternative would prevent appellee's recovery, under such circumstances. Hence, there was no error. *Bird v. Hart-Parr Co.*, 165 Iowa 542; *Rietveld v. Wabash R. Co.*, 129 Iowa 249; *Towberman v. Des Moines C. R. Co.*, supra.

XI. Protest is further made by appellants because in Instruction 14 the court told the jury, among other things, this:

"In this connection [on due care], you will consider the question as to whether the defendant A. C. Ellis, before he drove upon the pavement in question from his private driveway, saw the Stilson car coming from the east at an illegal and dangerous rate of speed, and saw that it was skidding upon the slippery pavement, as bearing upon the question whether, in the use of reasonable and ordinary care, said defendant [appellant] should

have waited until the Stilson car had passed, before he entered upon said pavement.''

Generally speaking, the court was telling the jury about the reasonable and ordinary care required in approaching the public highway from the private drive. What the court there said must  be considered on appellants' theory of the case and A. C. Ellis's testimony in reference to the subject-matter included within the instruction. More particularly, appellants' complaint is that there was no evidence to sustain the charge. Viewed from this standpoint, the record is against the appellants. A. C. Ellis's testimony in that respect was:

''Q. Now this [the plat] shows that the car [in which appellee was riding] came to the south side of the street, and then started north, and, you say, skidded there into you? How often had it done that same thing, coming down from that distance of a block and a half or two [where A. C. Ellis said he first saw the Ford]? A. Well, I tell you, I couldn't hardly count them ✳ ✳ ✳.''

Justification and support, therefore, appear for the instruction, under the facts and circumstances. Every item of evidence relating to the situation as claimed by appellants was material in determining whether or not A. C. Ellis used due care at the time.

XII. Once more, the instructions are challenged by appellants because the trial court imposed upon them a greater burden than upon appellee, concerning the care required in the premises.  By Instruction 7, this phase of the controversy is settled against this criticism beyond a peradventure of a doubt. Therein the court said to the jury:

''You are instructed that the terms 'negligence' and 'ordinary care,' wherever used in these instructions, have only just the same force and meaning, and not other or greater force or meaning when applied to one party hereto than when applied to another party hereto, and you cannot require of one party a higher or greater degree of care than you require of the other party.''

XIII. A new trial is demanded because there were injected into the record, appellants assert, references to the fact that they were carrying liability insurance. We have read the evidence  in this regard with great care, and are convinced that whatever may have been said in reference to this subject was not such as to demand a reversal of the judgment below. Witnesses brought this matter before the jury by relating conversations that took place in the Ellis home immediately after the accident. Mrs. Ellis herself made statements regarding this insurance. Assuming that what was said by the Ellises at that time was admissible as an admission against interest (as the record seems to show), it cannot be complained because a part thereof referred to the liability insurance. Admissions against interest are such even though they may embody information concerning insurance carried by the declarant. This conversation aforesaid was innocently related by the witnesses upon the stand, apparently without any thought of injecting prejudicial subjects into the record. The trial court, by special instruction, told the jury the following:

"Any evidence introduced concerning insurance is withdrawn from your consideration, and you are directed to disregard such testimony and not to discuss the same, nor allow it to influence your verdict."

XIV. Likewise, appellants seek to magnify the importance of the foregoing references to liability insurance through alleged improper arguments made to the jury by appellee's counsel.  To more specifically state appellants' complaint here, it is that appellee, through her counsel, again referred to this liability insurance, and furthermore suggested that appellee is a poor, poverty-stricken woman. Referring to what the counsel did say, the trial court, in ruling upon the motion for the new trial, made this observation:

"It is the judgment of the court that there was no improper or unwarranted statement in the closing argument to the jury by the attorney for the plaintiff [appellee], but statements objected to and excepted to by the defendants were made in answer

to the argument of defendants' [appellants'] attorneys. The court listened with care to the arguments of counsel of both sides, and it is the opinion of the court that the argument of plaintiff's counsel was fairly responsive to the argument of counsel for the defendants, and was not prejudicial, and was not unwarranted by the testimony.''

It appears that appellants' attorney asked: ''Why wasn't there something said in the Ellis home there about a claim against the Ellises?'' Replying to this, appellee's counsel suggested that the parties were friendly there, and did not expect ''any difficulty or lawsuit in settling the matter.'' Again, appellants' counsel, when criticizing appellee for not stopping at the hospital in Mason City, said: ''Why didn't plaintiff or her attorney hire doctors or experts?'' Explanation was offered by appellee's attorney to the effect that she did not have the money; for, while testifying, appellee said, ''I didn't want to stop at Mason City at the hospital, because I did not have any money.''

We agree, therefore, with the court below that, under the circumstances, error does not appear. Determination of a similar dispute was made in *State v. Burzette*, 208 Iowa 818, where the trial court's finding in reference to an argument's being strictly responsive to another given by the other side is decisive; whereas here the argument complained of is taken down in shorthand, but those previously delivered were not.

XV. During the examination of George Anderson, appellee's counsel asked him to state whether, from what he observed, appellee, after the accident, was able to get out of bed. Over appellants' objection to the effect that the inquiry asked for a conclusion and opinion, the witness was permitted to answer, and he said: ''She could not.'' Error is predicated thereon. When that interrogatory is considered with what was said before and immediately thereafter, we think it unobjectionable. Before the witness was asked for his statement, he had described what he saw in reference to appellee's condition. An illustration will aid here. Previous to the alleged erroneous question, the witness testified:

''We attempted to put her [plaintiff-appellee] on her feet,

but she couldn't stand up on them without help. * * * I saw her the next forenoon. She was in bed. I observed her attempt to move her feet. She could not move them."

That nonexpert witness only really gave his observations. His testimony amounted to nothing more than such description of what he saw. *Scott v. O'Leary*, 157 Iowa 222; *Langdon v. Ahrends*, 166 Iowa 636; *Bailey v. City of Centerville*, 108 Iowa 20. Accordingly, it is said in *Reininghaus v. Merchants' Life Assn.*, 116 Iowa 364:

"The testimony sought to be elicited [in that case] does, it is true, partake of the nature of a conclusion; but it is one of those conclusions which are so inseparable from the facts upon which they are based that the law makes them competent evidence, even by a non-expert witness. It has often been held proper for a witness to state whether a person with whom he was acquainted was sick or well or healthy or weak or strong, and to describe such symptoms as are apparent to an ordinary or nonexpert observer."

XVI. On direct examination, the appellant A. C. Ellis, in describing his method of driving out of the private way, said: "I drove out easily, and came onto the south side of the  pavement. No trouble at all. Q. Was that your practice?" In the face of appropriate objection, the witness answered: "Why, yes." Whereupon, the court sustained the objection.

Manifestly, appellants have no just cause to complain of that ruling. General custom was quite immaterial, because the essential fact had to do with what was done on the morning in question.

Twenty-nine general errors are assigned. Many of them contain numerous subdivisions. Therefore, without extending this opinion to an undue length, we deem it sufficient to say that we have carefully read the entire record, considered all the assignments of error, and are convinced that the appellants had a fair and impartial trial.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

ALBERT, C. J., and FAVILLE, WAGNER, and GRIMM, JJ., concur.

EVANS, J., not participating.