ELLEN WILLIAMS SCOTT, Administratrix, Appellee, v. J. V. McKELVEY et al., Appellants.

No. 45084.

MARCH 12, 1940.

REHEARING DENIED JUNE 20, 1940.

Hirschburg & Reynolds and Ralph N. Lynch, for appellee.

Hallagan, Fountain, Stewart & Cless, Paul W. Steward, and C. A. Smedal, for appellants.

SAGER, J.—Lincoln Highway, also known as No. 30, passes

through Ames, the city in which this accident happened, in an easterly and westerly direction. Grand Avenue joins it on the north in the form of a Y. There was a cement walk on the north side of No. 30, continuing around the curve on the west fork of the Y. There was also a walk on the south side of No. 30. An area marked as Marston Avenue abuts the south side of Lincoln Way but does not cross it. On this so-called avenue which was no longer used as a street there were no sidewalks and no curb line. There was an intake a short distance west of the west line of Marston Avenue if extended to the curb. Opposite was another intake about where the curve of the sidewalk along the westerly side of the Y joins the walk on the north side of No. 30. It was here the instructions of the trial court fixed an unmarked crossing. These instructions are the subject of complaint which will have attention later.

These distances should be noted: From the south intake looking in a northeasterly direction into Grand Avenue, the lights of a car could be seen a distance of 225 feet, and from the middle of the highway, 190 feet. It should be observed, too, that just north of the point 225 feet distant, as above-stated, Grand Avenue dips 20 feet to an underpass. Defendant came out of this dip around the curve to the place where the accident happened. For a better understanding of the facts a plat

is attached. While there is some dispute on the facts, the jury could have found them to be as we narrate them.

Plaintiff's decedent was a girl between 15 and 16 years old. She was familiar with the situation there, having crossed many times. At about 5:55 p. m., on November 18, 1938, she undertook to cross No. 30 at a point near, but slightly west of the south intake. As she approached the curb there was a car parked nearby. She did not go directly across but started, stopped just after she came around the edge of the parked car, looked in both directions, and stepped back. After several cars passed, she again stepped off the curb, looked in both directions, and started across. Reaching the center of the street she hesitated a moment, looked in both directions and proceeded across. She had reached within about 5 feet of the north curb where she was struck by defendants' car and killed. There was no marked crosswalk there but it was used as a place for crossing by "quite a few," noons and evenings. The slab of No. 30 is 40 feet wide.

From about a block west of where the girl was struck and into the west fork of Grand Avenue the roadway was laid out in four lanes. At or about the time that the plaintiff's decedent was engaged in attempting a crossing as narrated, defendant (M. M. McKelvey who will be referred to as if sole defendant) was coming down Grand Avenue from the north. As she approached No. 30 she was moving in the west lane of the west branch of the Y. As she neared No. 30 she was traveling with her car partly over the line dividing the two westerly lanes, with the purpose of taking the north of the three lanes into which Lincoln Way was marked about a block west. Her speed was from 25 to 30 miles per hour. As she was making the turn, she looked ahead, then east and to the rear of her car. She did not sound the horn nor see the girl until the impact which threw and rolled her a distance of 66 feet. It was dark at the time but the area around about was well lighted and the weather clear.

On this record, defendant says that the court erred in failing to direct a verdict for her for the reason that the plain-

tiff has not sustained the burden of proof as to freedom from contributory negligence, and for the further reason that the record established such negligence as a matter of law. We think the foregoing outline, meager as it is, is sufficient to show that there was presented a jury question both as to negligence of the defendant and the contributory negligence of plaintiff's decedent, unless some law of the road demands a different conclusion.

Before entering into a discussion of this, we take note of appellant's complaint that there was error in allowing the witness Smith to state that he had seen people crossing the highway at this place on previous occasions. She cites Schultz v. Starr, 180 Iowa 1319, 164 N. W. 163; Stilson v. Ellis, 208 Iowa 1157, 225 N. W. 346; and Koehn v. City of Hastings, 114 Neb. 106, 206 N. W. 19. These cases do hold that evidence of custom or habit of doing an act is not admissible to prove negligence. The question is not without difficulty but we find no prejudicial error here. We have held such evidence admissible to show freedom from contributory negligence and we think this was properly received. If this were not so, we would not reverse on this ground under this record. See Hamilton v. Chicago, B. & Q. Ry. Co., 145 Iowa 431, at page 436, 124 N. W. 363; Johnson v. Plymouth Gypsum Plaster Co., 174 Iowa 498, at page 503, 156 N. W. 721; and note to Dunagan v. Appalachian Power Co., 68 A. L. R. 1393, at page 1433.

Appellant charges error in the giving of the following instruction:

"XIX. You are instructed that the law of this state provides that, notwithstanding the provisions of the law that every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked cross-walk at an intersection, shall yield the right of way to all vehicles upon the roadway, the law further provides that every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and so in this case, if you find that Bonnie Scott was crossing said Lincolnway at a place other than a

marked or unmarked crosswalk; nevertheless the defendant, M. M. McKelvey, was duty bound to exercise due care to avoid colliding with her. That is, that she was bound to exercise the same care that a reasonably careful and prudent person would exercise under like and similar circumstances, taking into consideration the type and character of the highway, as to whether it was light or dark, the traffic upon such highway and all other facts as disclosed by the evidence in this case. And a failure upon the part of the said Mrs. McKelvey to exercise such care would be negligence.''

The complaint in effect is that there was an omnibus instruction which permitted the jury to regard acts of negligence not pleaded and to speculate on the evidence to find some negligence not charged in the petition. As sustaining this contention, appellant cites such cases as Keller v. Dodds, 224 Iowa 935, 277 N. W. 467; Holub v. Fitzgerald, 214 Iowa 857, 243 N. W. 575; and others in which we have condemned instructions which permitted consideration of negligence not plead. We do not find this instruction open to this criticism. The court elaborately and clearly instructed the jury on the pleaded charges— of failing to keep a proper lookout, in not seeing plaintiff, in failing to have the car under control and reduce speed to a reasonable rate, in failing to give warning, and in failing to yield a right of way, slow down or stop to permit plaintiff's decedent to cross at an unmarked crossing. The instruction did not submit, as we read it, any specifications of negligence not set forth in the petition. Moreover it was strictly in accord with section 357 of chapter 134, Acts of the Forty-seventh General Assembly, now section 5027.05, Code, 1939. This enactment was not involved in any of the cited cases.

Appellant's fourth complaint is that the court erred in giving instruction No. 15, particularly that part of it which reads as follows:

''If the exercise of reasonable care under the circumstances required her to take any particular precaution, then she was under the duty to have taken such precaution.''

The specific objection to this is that it left it to the jury to determine whether plaintiff's decedent was required to take any precaution for her safety and failed to instruct relative to the degree of duty required of her in maintaining a lookout and yielding a right of way. We think this criticism is hypercritical. The instruction, in addition to what is quoted, required the decedent to exercise ordinary care in accordance with her surrounding circumstances and observe all cautions required by reasonable care for her own safety, and that failing in such care, if such failure contributed in any way or in any degree to the accident, plaintiff could not recover.

■ The seventh complaint is to the effect that instruction No. 13, which will hereafter be set out, is erroneous for the reason that the court in defining the unmarked crosswalk, said that it was *"substantially straight south of the intake,"* rather than to definitely and accurately locate the lines thereof. We see no merit in this contention.

■ The greater portion of appellant's argument centers around the complaint that the court erred in giving instructions Nos. 13, 17 and 18, as placing an incorrect interpretation of the law with reference to crosswalks. Since we have no precedents to guide us in the interpretation of the statute, section 356, chapter 134, Acts of the Forty-seventh General Assembly (section 5027.04, Code, 1939), we set out the instructions in full:

"XIII. The fourth and remaining charge of negligence which the plaintiff makes is that the defendant, Mrs. McKelvey, failed to yield the right of way, slow down or stop, if need be, to so yield to Bonnie Scott who was crossing within an unmarked crosswalk at an intersection.

"Now, you are told that the law of this state provides that the driver of a motor vehicle shall yield the right of way, slow down or stop, if need be, to so yield to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection. A violation of this requirement of the law constitutes negligence. There is no

claim, nor is there any evidence in this case, that there was a marked crosswalk at or near the scene of the accident at the time thereof. However, it is plaintiff's claim that the decedent was walking within an unmarked crosswalk at the time of the collision. Our law defines an unmarked crosswalk as that portion of a right of way ordinarily included within the prolongation of a sidewalk at an intersection. The evidence in this case shows beyond dispute that there was a sidewalk along the west side of Grand Avenue, meeting the sidewalk along the north side of Lincolnway at a point approximately between the certain Elm tree and the intake on the north side of the Lincolnway street.

"You are instructed that within the meaning of the law, that portion of the roadway of Lincolnway included within two lanes across the Lincolnway substantially straight south from the intake just referred to would be an unmarked crosswalk within the meaning of the law because it would fairly be a prolongation of the sidewalk along the west side of Grand Avenue. And if the decedent, Bonnie Scott, was crossing Lincolnway substantially within the lanes just referred to, then she was within an unmarked crosswalk within the meaning of the law, and in such event she was entitled under the law to the right of way over the McKelvey car. If, however, the said Bonnie Scott was crossing Lincolnway at a point west of or at some other point other than a lane running south from the intake along the north curb of said Lincolnway, as heretofore described then she was outside of an unmarked crosswalk and would not be entitled to the right of way; but in such event automobiles upon the roadway would have the right of way over the girl, as you are hereinafter instructed in Instruction No. XVII, hereof.

"If you find by a preponderance of the evidence that Bonnie Scott was walking across Lincolnway in a substantially straight north direction toward the intake at the north curb, then she would have the right of way over the McKelvey car, and in such an event, it was the duty of the defendant, Mrs. McKelvey to slow down or stop her car, if need be, to yield

such right of way to the said Bonnie Scott, and if she failed to exercise ordinary care and prudence to slow down or stop her car, if necessary, to avoid striking Bonnie Scott, then Mrs. McKelvey would be negligent in the fourth respect charged by the plaintiff.''

''XVII. The law of this state defines a crosswalk as follows: ' ''Crosswalk'' means that portion of a roadway ordinarily included within the prolongation or connection of the lateral lines of sidewalks at intersections, or, any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface.'

''You will note that under the law there are two kinds of crosswalks, an unmarked crosswalk and a marked crosswalk, and it is without dispute in this case there were no marks at the crosswalk across Lincolnway at the place in question, so it was an unmarked crosswalk. In determining where this crosswalk was located and as to whether or not Bonnie Scott was walking across the Lincolnway upon an unmarked crosswalk, you are told that the evidence shows without dispute that there was a sidewalk running along the west side of Grand Avenue leading south to the sidewalk on the north side of Lincolnway. If it were not for the curve in the roadway between Grand Avenue and Lincolnway, this sidewalk would go straight south and meet the sidewalk along the north side of Lincolnway at right angles and in such event unquestionably the space between the prolongation between the outside lines of the sidewalk along Grand Avenue to the south across the paving on Lincolnway would be an unmarked crosswalk. But by reason of the curve in the roadway at the intersection of Grand Avenue and Lincolnway, constructed to facilitate automobile traffic, the sidewalk along the west side of Grand Avenue curves to the west following the roadway of Grand Avenue until it meets the sidewalk along the north side of Lincolnway. You have the plats before you and are able to locate the place where the sidewalk along the west side of Grand Avenue meets and joins the sidewalk along the north side of Lincolnway, and you are instructed that the area within two lateral lines, straight across

the paving on Lincolnway, which two lines would be substantially the same distance apart as the outside lines or width of the sidewalk along the west side of Grand Avenue, extended south from the point where the said Grand Avenue walk meets and joins with the walk on the north side of Lincolnway, and across the paving upon Lincolnway, would be an unmarked crosswalk within the meaning of the law.

"If Bonnie Scott was at the time of the collision in question walking within the area above referred to an unmarked crosswalk, then under the law she was entitled to the right of way over the McKelvey car. But if she was walking across the Lincolnway west of the area above referred to as an unmarked crosswalk, at the time of the collision, then she was not entitled to the right of way over the McKelvey car. If Bonnie Scott was walking across said Lincolnway at some other place than an unmarked crosswalk, she was duty bound to yield the right of way to vehicles upon said Lincolnway and was also duty bound to use that degree of care that a reasonable and prudent and cautious person would use under like and similar circumstances. Greater care must be observed by a pedestrian crossing the street at a point other than a crosswalk. The danger is greater and a corresponding increase in care must be exercised by a person thus crossing, taking into consideration the kind of a street she was crossing, the amount of traffic upon the said street, the time of day, the visibility or lack of visibility, the surface and width of the street and all conditions then and there existing as disclosed by the evidence in this case, and she was duty bound and required to make reasonable use of all her senses to observe impending danger and if she failed to make use of all of her senses that a reasonably careful and prudent person of her age would use under like and similar circumstances, and failed in any way to exercise the care that a reasonably careful and prudent person would exercise under the existing circumstances, such lack of care upon her part, if any there was, would be negligence, and if said negligence, if any there was, contributed in any manner or in

any degree to the damages of which plaintiff complains, then plaintiff cannot recover in this case."

"XVIII. You are instructed that if Bonnie Scott started across Lincolnway at a time when the McKelvey car would not be seen by her, then you are instructed that she was justified in starting to cross Lincolnway and her conduct in so doing under those circumstances would not amount to any violation of the statute regarding right of way, and if under such circumstances the McKelvey car first came into view and turned west on to Lincolnway at a time when Bonnie Scott was part way across the said roadway, then she was not bound as a matter of law to stand and wait in the roadway, nor to return to the south curb, in order to permit the McKelvey car to pass.

"Bonnie Scott, however, was required at all times to exercise ordinary care and caution for her own safety and was bound to exercise the care and caution that a reasonably careful and prudent person of her age would exercise under the circumstances as disclosed by the evidence in this case. If the McKelvey car came into view for the first time while Bonnie Scott was in the act of crossing the pavement, she would have been negligent in continuing on her course, if she failed to exercise that care and caution for her own safety that a reasonably careful and prudent person of her age would exercise; otherwise not."

The question presented is not free from doubt, but we hold that the court correctly construed the statute, and if this were not so, we are unable to see how there could be reversible error in the way the courts submitted the case under this record. We again direct attention to the plat. It will be observed that the place where this girl tried to cross was a most natural and reasonable place to make the attempt. It seems to the writer that undue stress has been placed upon the question of yielding the right of way under the facts disclosed by the record. That plaintiff's decedent had the right to cross No. 30 at some point within the city limits is obvious; and it

will not be argued, we think, that she was required to follow the extensions of No. 30 or of Grand Avenue to a place where there was a marked crossing or one indicated by the extension of sidewalk lines. If this accident had occurred on a country highway, there would be no room for discussing the question as to who should yield the right of way because there it clearly would have been the duty of the pedestrian to so yield. The obligation of the girl in this case certainly could not be greater where she tried to cross than it would have been outside of the limits of the city of Ames.

This being so, the case resolves itself into one for the jury to determine the respective obligations of the parties in the light of the circumstances disclosed. As already stated, the court correctly laid down in its instructions the rules by which the movements of the plaintiff's decedent and the defendants were to be judged under the law. Marked crosswalk or none, under the evidence of this case we are satisfied the court rightly submitted the case to the jury as it did. With their finding and the trial court's judgment on such verdict we are content. We have examined the authorities cited by the parties, but aside from the light they throw in the general principles involved in accidents like this, they afford no help in the solution of the questions here presented.

What has been said makes it unnecessary to consider some of the other contentions made by appellant. The case is accordingly affirmed.—Affirmed.

All JUSTICES concur.