**Kim RUBY, a minor, by Eugene Ruby, his next friend, and Eugene Ruby, Appellants,**

**v.**

**Monte R. EASTON, Appellee.**

**No. 55483.**

Supreme Court of Iowa.

April 25, 1973.

Joe Cosgrove, Sioux City, for appellants.

Paul J. Yaneff, Sioux City, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP, and McCORMICK, JJ.

McCORMICK, Justice.

Plaintiffs appeal from trial court's order sustaining generally defendant's eight-part motion for directed verdict in this motor vehicle personal injury case. We reverse and remand because of trial court's failure to rule separately on each ground of the motion as required by rule 118, Rules of Civil Procedure.

This case arose from an automobile-pedestrian accident which occurred in Sioux City at about 7:30 p. m. December 14,

1966. Plaintiff Kim Ruby was then 15 years old. He received injuries when struck by a car driven by defendant Monte R. Easton on Floyd Boulevard near its intersection with highway 75 in the north part of Sioux City.

The petition was in two divisions. In the first Kim sought recovery for his injuries and in the second his father Eugene asked damages for medical expenses and loss of his son's services. Plaintiffs alleged seven specifications of defendant's negligence, one of which was stricken on defendant's motion before trial. In his answer defendant relied on a general denial, a claim of legal excuse based on sudden emergency, and an affirmative defense of contributory negligence. Plaintiffs' motion to require defendant to make specific his general allegation of Kim's negligence was overruled. Plaintiffs' reply was a general denial.

I. *The ruling on motion for directed verdict.* At the conclusion of plaintiffs' case-in-chief defendant moved for directed verdict on the following grounds:

"1. That the plaintiff has failed to prove by the material and competent evidence the cause of action pleaded in the plaintiffs' petition.

2. That the plaintiffs' evidence presents no question of fact, and no issue of fact which can be passed upon by the jury.

3. That the plaintiff has failed to prove by material and competent evidence that the negligence of the defendant, if any, was the proximate cause of the accident and injury of which the plaintiff complains.

4. That the plaintiff has failed to prove by material and competent evidence that the defendant was negligent, and that said negligence was the proxi-

mate cause of the accident and injury complained of by the plaintiff.

5. That the evidence conclusively shows that the plaintiff, Kim Ruby, was negligent, and that said plaintiff's negligence was the proximate cause of the injury and damage complained of.

6. That the evidence conclusively shows that the plaintiff was crossing a roadway at a point other than within a marked crosswalk, or within an unmarked crosswalk and an intersection, and failed to yield the right of way to the vehicle being operated by the defendant, as required by Section 321.328 of the Iowa Code.

7. That said negligence in failing to yield the right of way to the defendant driver was a proximate cause of the accident and injury of which the plaintiff complains, as a matter of law.

8. That if a verdict is rendered for the plaintiff by the jury, it would be the duty of the court to set such verdict aside."

Trial court reserved ruling. When the motion was renewed after defendant's evidence trial court entered the following ruling:

"After hearing the evidence in this case and the examination of the pleadings and records, the court is of the opinion that the motion for directed verdict should be and is sustained, and the jury is instructed to return a verdict for the defendant."

Plaintiffs assign as error the failure of trial court to rule separately on each ground of the motion.

Rule 118, R.C.P., provides:

"Specific rulings required. A motion or other matter involving separate grounds or parts, shall be disposed of by separate

ruling on each and not sustained generally."

Rule 118 has been in the rules since they were adopted in 1943. In discussing it, the advisory committee said:

"This is new. There is much confusion as to the right of a party to specific rulings. Under the doctrine that a general ruling sustaining a motion is deemed to sustain every ground, no matter how absurd, it is necessary in review of such rulings to argue every ground, even those the judge never actually thought were good. Both the appellate court and the parties should be entitled to know what grounds are upheld, thus shortening the later phases of the matter. No one is harmed by this." 2 Iowa Rules Civil Procedure Annot. (Third Ed.1970).

Our research has revealed the mandate of rule 118 has been called to the attention of the bench and bar in opinions of this court at least 25 times since its adoption. Justice Hays, writing in Melsha v. Tribune Pub. Co. of Cedar Rapids, 243 Iowa 350, 355, 51 N.W.2d 425, 428 (1952), expressed his personal view that failure to observe the rule "should ordinarily be held to constitute reversible error." He added:

"Under such a view, the successful party in the trial court, if he would protect the fruits of his victory in the event of an appeal, would see to it that such rule was complied with, or make an effort to such effect. There is an old saying 'a word to the wise is sufficient.' "

This admonition did not appear to be sufficient. In Bourjaily v. Johnson County, 167 N.W.2d 630, 632 (Iowa 1969), the court observed:

"We have as yet refrained from predicating reversible error solely on the basis of the trial court's disregard of rule 118, at least in the absence of some compelling cause to hold otherwise. Neverthe-

less, we have repeatedly stated we much prefer specific rulings on each and every ground of a motion. [citations]

"Meaningful compliance with rule 118 greatly facilitates appellate procedure in that counsel are apprised of the precise grounds of the adverse ruling and are thereby enabled to properly and narrowly limit their arguments on appeal to the actual grounds responsible for the court's ruling. The ever increasing volume of appeals renders it imperative the rule be followed."

Finally in our last confrontation with a violation of the rule, in Greenwell v. Meredith Corporation, 189 N.W.2d 901, 904 (Iowa 1971) filed September 9, 1971, we said:

"While we have declined to reverse in any case for the trial court's noncompliance with rule 118, R.C.P., we shall henceforth insist that the rule be strictly complied with to avoid necessity of appellants arguing each and every ground of a motion to direct a verdict, and shall require trial courts to make clear to parties and to this court what grounds of motion were sustained so that arguments on appeal can be confined and limited thereto."

The present case was tried after our *Greenwell* decision.

In resisting reversal, defendant argues plaintiffs did not ask for separate rulings on each ground of the motion and therefore cannot complain here. No authority is cited. We perceive no basis to make the mandate of rule 118 dependent upon a request by the losing party. The rule requires a trial court to use a rifle rather than a shotgun in ruling on motions involving separate grounds. The object is to narrow the issues for appeal. This is intended to save time, work and expense not only for the appellant but for this

court as well. We cannot afford the luxury of reviewing grounds which may in fact not be responsible for a trial court's ruling.

In accordance with the policy enunciated in *Greenwell,* this case will be reversed because of trial court's noncompliance with rule 118. The nature and scope of our review in this case and of our mandate on remand must next be decided.

If we were to reverse for noncompliance with rule 118 and nevertheless pass on the merits of each ground of the motion for directed verdict we would frustrate the policy requiring reversal. We would be assuming the additional burden the rule is intended to prevent. In addition, if merit was found in any ground of the motion, reversal and remand for new trial would only serve to punish the victor without accomplishing anything else. If no merit was found in any ground, we would have reversed and remanded for new trial in any event and our policy of reversing for noncompliance with rule 118 would be meaningless.

We therefore adopt a position which ought to effectuate our policy without imposing an unreasonable burden on anyone. Cases involving violation of rule 118 will ordinarily be reversed. Proceedings upon remand will be a matter for determination in each case. In making that determination we will not usually pass on the merits of each ground of the motion. We will instead review the record as necessary to decide the scope of our mandate on remand. Where it seems proper we will exercise our discretion to remand for compliance with rule 118 rather than new trial. However, in the present case our review of the record persuades us new trial should be ordered. Therefore, although we will not pass on each ground of the motion for directed verdict, we will discuss several of the key problems raised in the parties' briefs which are likely to recur upon retrial.

II. *Defendant's negligence.* We will review two specifications of defendant's negligence which have been fully argued by the parties. The first concerns plaintiffs' specification defendant was negligent in failing to warn plaintiff Kim Ruby by sounding his horn prior to the accident. The second is their assertion of his negligence in failing to maintain a proper lookout.

Three principles so well established they do not require citation of authority are applicable: (1) the evidence is viewed in its light most favorable to the party against whom the verdict was directed; (2) generally questions of negligence, contributory negligence and proximate cause are for the jury and may be decided as matters of law only in exceptional cases; (3) a jury question is engendered even where facts are undisputed or contradicted if reasonable minds might draw different inferences from them.

As to plaintiffs' specification concerning failure to warn they first seek to invoke Code § 321.314. It provides in part:

> "When signal required. No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement * * *."

Its applicability depends upon resolution of two issues: whether defendant turned his vehicle from a direct course upon the highway within the meaning of the statute and whether, if he did, the jury could find the statute required him to sound his horn under the evidence in this case.

The accident happened on a one-way section of Floyd Boulevard serving as an exit from highway 75 and described in the record as the "Leeds cutoff." The accompanying plat illustrates the intersection involved.

Defendant had driven on highway 75 from LeMars. Highway 75 is a four lane divided highway in the area involved. Defendant was in the right lane of the southbound section as he neared the Floyd Boulevard exit. If he continued on highway 75 he would be obliged to follow a broad curve to his left. In order to leave highway 75 and enter Floyd Boulevard he would drive straight ahead into the one-way street instead of proceeding around the curve.

Since defendant left highway 75 he drove straight ahead rather than around the curve. He argues Code § 321.314 is inapplicable because he did not change direction in leaving highway 75. The problem is whether a vehicle can be said to turn from a direct course upon a highway when the highway changes direction but the vehicle does not.

We discussed the statutory language in one previous case, Janvrin v. Broe, 239 Iowa 977, 984–988, 33 N.W.2d 427, 432–433, (1948), which is distinguishable on its facts. The defendant in that case was alleged to have turned from a direct course within the meaning of the statute when he headed his parked car back into the lane of travel from a parked position. He was accused of negligence in failing to signal his intention to turn by hand and arm. The court held the statute inapplicable because such turn signal was required to be given by a vehicle during not less than the last 100 feet traveled by it prior to its turn. "It would be impossible for one starting a parked car to give such a signal. One starting a parked car from its proper place of parking along the right side or curb of a city street can turn only to the left, and the statutes do not require a signal to indicate it." 239 Iowa at 986, 33 N.W.2d at 433.

By dictum the court in *Janvrin* purported to define "direct course": "A 'direct course' in the meaning of the code section would reasonably appear to be the straightforward course." *Id.* The court defined the "course" of a motor vehicle as "its mo-

tion or movement with reference to its direction or line of progress," relying on a definition at 20 C.J.S. 1303. However, maritime law from 15 C.J.S. Collision § 2 at p. 13 was resorted to in describing "direct course" as " 'Progress from point to point without change of direction; any part of a progress, from one place to another, which is in a straight line or in one direction; the track or line of motion; direction in which motion takes place * * *.' " *Id.* We disagree with the *Janvrin* definition insofar as it equates direct course with movement in a straight line.

■ We do not believe the legislature had maritime law in mind when it enacted § 321.314. The course of a ship at sea may differ substantially from its compass heading, and the word in maritime law is obviously used to express this distinction. See 15 C.J.S. Collision, *supra*; Black's Law Dictionary at 425 (Rev. Fourth Ed. 1968) ("Course of Vessel. In navigation, the 'course' of a vessel is her apparent course, and not her heading at any given moment."). Instead we believe the legislature was more likely mindful of the path of motor vehicles on highways. Curves in highways are rather commonplace in the rolling countryside of Iowa. We do not believe a motor vehicle which follows the same lane of travel on a highway around a curve is turning from a direct course upon a highway within § 321.314. Rather such vehicle is pursuing a direct course on the highway. A "direct course" on a highway is the motion or movement of the vehicle in the usual or natural course or line of the highway. See Ferris v. McArdle, 92 N.J.L. 580, 106 A. 460 (1919); Black's Law Dictionary at 546 (Rev. Fourth Ed. 1968). It is not necessarily a straight course. A direct course will take a vehicle in precisely the direction of the lane of travel it is using on the highway. It follows that when a vehicle leaves such lane of travel it is turning from a direct course.

Thus a vehicle turns from a direct course when it moves across the centerline into the opposite lane of a highway, Waga-

man v. Ryan, 258 Iowa 1352, 1357, 142 N. W.2d 413, 416 (1966), when it moves back again, Miller v. Lowe, 220 Iowa 105, 261 N.W. 822 (1935), and when departing from one street to another at an intersection, Johnson v. Kinnan, 195 Iowa 720, 192 N.W. 863 (1923). The statute is applicable to vehicles entering or leaving either leg of a "Y" intersection. Soreide v. Vilas & Co., 247 Iowa 1139, 78 N.W.2d 41 (1956); Scott v. McKelvey, 228 Iowa 264, 290 N. W. 729 (1940).

■ Whether the vehicle needs to be steered manually to change its direction from a direct course on the highway is not determinative. A vehicle departs from its lane of travel by going straight where the highway curves as much as by turning where the highway is straight. Cf. Jennings v. Arata, 83 Cal.App.2d 143, 188 P.2d 298 (1948). We hold Code § 321.314 is not inapplicable simply because defendant did not change direction in leaving highway 75.

The other issue as to § 321.314 is whether there was evidence from which the jury could find defendant should have sounded his horn under the statute before departing highway 75 for Floyd Boulevard. Plaintiff Kim Ruby seeks to bring himself within the second of the three factual situations for applicability of § 321.314 outlined in Crow v. Weller, 197 N.W.2d 352 (Iowa 1972). He alleges the evidence supports a finding the movement of defendant's vehicle would affect his safety within the statute which requires the signal prior to movement from a direct course "if any pedestrian may be affected by such movement." We agree.

■ Here there was evidence from which the jury could find defendant was about 150 feet away from Kim and three companions before he started into the Leeds cutoff. Defendant saw only three boys but noted they were running east on 46th Street toward the exit street. His wife said, "Watch out for those boys." He applied his brakes and slowed from 40 miles per hour to about 25 miles per hour, but he did not honk his horn. Three of the boys veered away from the street and stayed on the west side, but Kim entered the exit street and was struck there. This constitutes evidence from which the jury could find defendant had a duty before leaving highway 75 to sound his horn to warn Kim of his intention to do so. There was sufficient evidence to support submission of plaintiffs' theory of defendant's negligence in failing to sound his horn under § 321.314.

Plaintiffs also invoke Code § 321.329 in support of submission of this specification. It provides in part:

"Duty of driver—pedestrians crossing or working on highways. Notwithstanding the provisions of section 321.328 every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall given warning by sounding the horn when necessary and shall exercise due care upon observing any child * * * upon a roadway."

Code § 321.328 concerns a pedestrian's duty to yield and will be discussed in connection with the issue of Kim Ruby's contributory negligence. The difference between defendant's duty to sound a horn under §§ 321.314 and 321.329 under the record in this case devolves to a question of timing. When § 321.314 is applicable it requires the horn signal prior to departure from a direct course. Section 321.329 is not so limited. When it is applicable the horn must be sounded "when necessary" to warn the pedestrian. Thus, if applicable, § 321.329 may have required the sounding of defendant's horn during the course of his travel on the cutoff prior to the accident.

■ We believe there was a jury question as to defendant's duty to sound a horn under § 321.329. The facts previously recited raise a question as to whether defendant exercised reasonable care in failing to do so. There is no question Kim was on the roadway when struck. Defend-

ant testified that although he saw the other three boys prior to the accident he did not see Kim until the instant it happened. The duty to signal is not obviated by a failure to see the pedestrian where as here there is evidence from which the jury could find he should in the exercise of reasonable care have seen him in time to give a signal and avert the accident. Nichols v. Snyder, 247 Iowa 1302, 78 N.W.2d 836 (1956).

There was sufficient evidence to support submission of plaintiffs' theory of defendant's negligence in failing to warn Kim under § 321.329.

■ Defendant's alleged failure to maintain a proper lookout was another specification clearly for the jury. Defendant testified he did not see Kim until he appeared in front of the car in his headlights at the time of impact. Kim was three to five feet into the street at that point. Although it was dark, the night was clear and defendant had his headlights and streetlights to aid his vision. He had seen the other three boys. Kim testified he was ahead of them, having run east down the hill from the church parking lot southwest of the intersection of 46th Street and Floyd Boulevard. His intention was to cross the exit street to the island in the intersection. After he got to the embankment near the west side of the street, Kim slowed but continued into the street without stopping.

In these circumstances it was for the jury to say whether defendant was negligent in failing to maintain a proper lookout. See Schaben v. Kohles, 186 N.W.2d 598 (Iowa 1971).

■ III. *Contributory negligence.* Plaintiffs do not assign as error trial court's order overruling their motion for specific statement of defendant's general allegation of contributory negligence. A pleading of general negligence will permit consideration of any specification of negligence which has support in the record. Cavanaugh v. Jepson, 167 N.W.2d 616, 621 (Iowa 1969).

■ Defendant predicates his theory of Kim's contributory negligence as a matter of law on two bases, failure to maintain a proper lookout and failure to yield the right of way. We will consider each of them. As to Kim's lookout he testified that he looked north on highway 75 before he left the church parking lot and could see about one mile. He observed cars on the highway about one-half mile away. As he reached the street he glanced over his shoulder to the north as he walked. Although he saw traffic on highway 75 he observed none on the cutoff and continued into the street. He said he stumbled near the curb but regained his balance and resumed walking before he was hit.

We recently reviewed the duty of a minor pedestrian in similar circumstances in Ackerman v. James, 200 N.W.2d 818, 824–826 (Iowa 1972). The principles recited there are applicable here. Factors under *Ackerman* which militate against a finding of Kim's contributory negligence as a matter of law include his age, the evidence as to his efforts to observe, and his right to rely on defendant's compliance with the law. Particularly relevant for jury consideration on the issue of reliance was whether defendant should have sounded his horn to warn Kim. 3 Blashfield Automobile Law and Practice § 141.47 at 683 (Third. Ed. 1965). The issue of Kim's lookout was for the jury.

■ We reach the same conclusion as to his duty to yield the right of way under Code § 321.328. That section, which was also discussed in *Ackerman,* relevantly provides:

"Crossing at other than crosswalk. Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway except that cities and towns may restrict such a crossing by ordinance."

As pointed out in *Ackerman, supra,* at 826, Kim's age is a factor bearing on the deter-

mination whether he was negligent in failing to yield the right of way. Violation of § 321.328 by an adult pedestrian is negligence per se. Stewart v. Hilton, 247 Iowa 988, 993–994, 77 N.W.2d 637, 640 (1956). Considerations affecting determination whether a statutory violation is negligence per se were extensively discussed in Montgomery v. Engel, 179 N.W.2d 478 (Iowa 1970); see also Jorgensen v. Horton, 206 N.W.2d 100, (Iowa 1973), filed March 28, 1973. Even where a statutory violation is negligence per se for an adult, countervailing policy reasons require the conduct of minors not engaged in adult activity to be measured by the standard of reasonable behavior of children of similar age, intelligence and experience. "In these cases where the two principles collide—where statute and child meet—the better reasoned decisions hold a child is not to be charged with negligence per se even though his conduct may involve violation of a statute which relating to an adult would require application of that rule. [citations]" Rosenau v. City of Estherville, 199 N.W.2d 125, 129 (Iowa 1972). The previously quoted provisions of Code § 321.329 which concern a driver's correlative duty when meeting a pedestrian on a roadway single out children for special status.

Kim was not engaged in adult activity in this case. His age, intelligence and experience are relevant on the issue of his negligence in failing to yield the right of way. Violation of his duty under § 321.328 would be evidence of negligence rather than negligence per se. The question whether Kim was in the exercise of ordinary care when attempting to cross the highway was for the jury under proper instructions. See Ackerman v. James, *supra*, 200 N.W.2d at 826.

IV. *Rulings on evidence.* Plaintiffs challenge trial court rulings admitting opinions as to point of impact by two witnesses, Ronald Pettit, a police sergeant who made a post-accident investigation, and Dennis Binnebose, one of the boys with Kim prior to the accident. There was dispute in the evidence as to where on the exit street the accident occurred. Kim placed it south of the 46th Street intersection. Witnesses Pettit and Binnebose placed it in that intersection.

Officer Pettit was called to the scene and made an extensive investigation including interrogation of two of Kim's companions. There is no question raised as to his qualifications generally to express opinions as to point of impact. We have consistently held such an investigating officer, upon proper foundation, may give his opinion as to point of impact. Dougherty v. Boyken, 261 Iowa 602, 608, 155 N.W.2d 488, 492 (1968). However, where the opinion is based in part on hearsay it is inadmissible. *Id.* 261 Iowa at 613, 155 N.W. 2d at 494; Brooks v. Gilbert, 250 Iowa 1164, 98 N.W.2d 309 (1959). Here the officer was asked to base his opinion in part on his out-of-court interviews of witnesses. Plaintiffs made timely objection including the ground it called for an opinion based on hearsay. It was overruled. The objection should have been sustained.

Witness Binnebose acknowledged Kim and defendant were out of his vision at the time of the accident. He did not see it. Nevertheless he was asked and gave his opinion as to where it happened. Although plaintiffs' general objection which was overruled was inadequate to preserve error, we believe on proper objection the evidence would be inadmissible. "Whenever the opinions, conclusions, or impressions of a nonexpert witness are offered in evidence, the witness must have observed the facts and have acquired sufficient knowledge to form an opinion that can reasonably be expected to be reliable and trustworthy." 31 Am.Jur.2d Expert and Opinion Evidence, § 24 at 522. No such foundation was shown here, and the witness was asked for and permitted to make an uninformed guess.

For the reasons stated in Division I, the case is reversed and remanded for new trial.

Reversed and remanded.

All Justices concur except LeGRAND, J., who concurs in the result.