HAZEL ZUCK, Administratrix, Appellant, v. OLIVER D. LARSON, Appellee.

No. 43456.

DECEMBER 15, 1936.

Geo. J. Dugan, Larry H. Dugan, and Smith & More, for appellant.

Tinley, Mitchell, Ross & Everest, and White & White, for appellee.

RICHARDS, J.—Plaintiff-administratrix brought this action to recover damages on account of fatal injuries sustained by her decedent Charles Zuck, when he was struck by an automobile driven by defendant. The basis of the action is defendant's alleged negligence. At the close of plaintiff's evidence defendant's motion for a directed verdict was sustained and a judgment rendered against plaintiff. Therefrom plaintiff has appealed. Whether the trial court erred in sustaining the motion on the ground that plaintiff's evidence affirmatively shows that decedent was guilty of contributory negligence as a matter of law is the sole question presented.

With respect to such question, the evidence, viewed in a light as favorable to plaintiff as is reasonably possible, was such that the jury could have found the following facts: Noah Nissly had employed E. A. Gibbins, Mike Finn and the decedent Zuck to cut corn on Nissly's farm about four miles west of Dallas Center. A young lady was also employed to do housework. On August 31, 1934, Nissly picked up the four employees in his automobile and started toward the farm on primary highway number 7. Arriving alongside the cornfield of the farm at between 8:30 and 9 o'clock, a. m., the car was stopped in a position as far out on the right side of this highway as was possible and still have space between the car and the guardrails to open the right-hand door. The car then stood headed west, its right wheels on the dirt shoulder and its left wheels upon the paving a foot or so from the north edge thereof, the highway here extending east and west. From the point where the car was stopped there was a slight descent toward the west for about three hundred feet and westerly from that point there was a long six-degree ascent. From this place where the car was standing there was a clear and unobstructed view of the highway toward the west for a half mile. When the car stopped Zuch, plaintiff's decedent, and

Gibbins alighted, using the right-hand door. They walked around to the front end of the car. The field in which they were to cut corn lay along the south side of this immediate portion of the highway. Gibbins had brought his own corn knife. The knife to be used by Zuck was in the cornfield and as he stood at the southwest corner of the car he was talking with Nissly, who still sat in the car, as to where to commence cutting and concerning the place where the corn knife would be found. This conversation was brief. Zuck then started to walk across the pavement proceeding south or southeast, facing toward the south or southeast. So proceeding he had reached the center or approximately the center of the paving when he was struck by defendant Larson's car coming from the west. It was the left end of the bumper and left headlight and perhaps a part of the left front fender of the car that struck decedent, and it was with such force that he was thrown seven or eight feet in the air, the car passing under him. Zuck fell along the black lines on the pavement, the greater portion of his body lying north of the center. Death resulted in a few hours. When the Larson car, coming from the west, was within one hundred twenty-five or one hundred fifty feet from the point where decedent was struck it was observed by Nissly and others at the Nissly car, the noise of the car having attracted their attention. Decedent was then four or six feet west of the Nissly car close to the center of the pavement. Nissly shouted a warning to the decedent but so short a time elapsed that decedent, jumping when Nissly shouted, was still in the air apparently off his feet when the impact came. One of plaintiff's witnesses testified that this jump was toward the south directly in the path of the approaching car. At about the time the Larson car was first observed at the distance stated, its course was being changed from the south side of the pavement, where it was traveling, toward the north side so that its left wheels were slightly over the black line to the north. Just before decedent was struck the course of the car was changed back toward the south so that when Zuck was hit the left rear wheel overlapped a little the north black line and the left front wheel was on or south of the south black line. These black lines were the standard safety markings that extended lengthwise with the paving and parallel with each other, each being about five inches from the center line of the paving. At the place of this accident the paving was eighteen feet in width and on either side was a

dirt shoulder. The distance from the edge of the pavement to the guardrails that were along the outside edge of each shoulder was about five feet. After the Nissly car was stopped at the place described there were no vehicles traveling upon this portion of the highway in either direction during the occurrences above described, except the Larson car. No warning signal was heard by those in and about the Nissly car, and its speed was fixed by the witnesses as being between fifty and sixty miles per hour.

■■■ It was a primary highway that the decedent was attempting to cross, having a paved surface only eighteen feet in width, and this width was partially occupied by the Nissly car at the point of the accident. This portion of the highway was not within any city or town and consequently the speed of traffic was not controlled by any statute or ordinance limiting speed in terms of miles per hour. Being a primary highway it carried a large amount of traffic. It was a place obviously dangerous to a pedestrian walking across this highway. One has but to consider the difficulty in quickly stopping an automobile moving at the speed adaptable to such highways, or in so maneuvering upon this narrow highway as to avoid striking a pedestrian suddenly moving across in front of a car, to appreciate the serious peril a pedestrian must contemplate in attempting to cross such a highway, at a place where no crossing place for pedestrians is provided or contemplated. Everyone is bound to exercise care commensurate with known dangers. Armbright v. Zion, 108 Iowa 338, 79 N. W. 72. The perils of the situation being so apparent and observable, ordinary care demanded that this pedestrian observe whether he was walking out in front of approaching traffic dangerously close to him before attempting to cross. With this standard of care decedent failed to conform. He walked out into the center of the pavement without making any observations toward the west from which direction defendant's car had been approaching, fully observable by decedent during the period it was traveling the one-half mile. When he attempted to cross the car was almost upon him. The decedent failed to exercise ordinary care. Negligence characterized his acts. Clearly such negligence contributed to his injury. This conclusion has support in the conclusions reached in Nyswander v. Gonser, 218 Iowa 136, 253 N. W. 829; Stawsky v. Wheaton, 220 Iowa 981, 263 N. W. 313; Fortman v. McBride, 220 Iowa 1003, 263 N. W. 345; Whitman v. Pilmer, 214 Iowa 461, 239 N. W. 686.

In order to avoid the want of care here exhibited appellant argues that the decedent was confronted with a sudden emergency and on account of that fact he had a lessened or abbreviated opportunity in which to choose a course of safety. For that reason says appellant the decedent's actions should not be weighed with nicety nor compared with what a prudent person would have done had there been time and opportunity for realizing the situation. Whether there would have been soundness in this proposition had decedent been exhibiting ordinary prudence up to the time he heard the warning shout and jumped into the air need not be discussed. To the facts that are before us the proposition does not have application because before walking out into the middle of the pavement decedent had opportunity to make the observation a prudent person would have made, and when he so walked he was pursuing his own initiative, was negligently creating his own peril, and in so doing was not acting under compulsion of any emergency suddenly realized by him. Until the warning shout he did not sense that a catastrophe impended.

 As a further excuse for the negligent character of decedent's act, appellant urges that the attention of decedent was diverted just prior to the accident, so that such diversion and preoccupation took his attention away from the road, and on account of the great speed of the Larson car and the failure of any signals, the decedent could not be held with nicety to weigh his chances of escape. Appellant cites from Kadlec v. Johnson Construction Co., 217 Iowa 299, 308, 252 N. W. 103, 107, the following:

"It is also the settled rule of law that a person is not guilty of contributory negligence, as a matter of law, where his attention has been diverted from a dangerous condition on the roadway, and that, although he knew of the danger, and he is prevented from avoiding it by reason of his attention being diverted, he is not necessarily guilty of contributory negligence." In the Kadlec case, there is found a quotation from Hodgson v. Wisconsin Gas & Elec. Co., 188 Wis. 341, 206 N. W. 191, which appellant also cites and which reads:

"The doctrine of these cases may be thus stated: Such diversion or preoccupation so far excuses the exercise of that degree of care ordinarily required as to make it a jury question

whether the plaintiff's conduct under the actual circumstances constitutes ordinary care.''

The alleged diverting circumstances upon which appellant relies is the conversation that took place between Nissly and the decedent as already described. But we are not convinced that appellant has shown, by the fact of this conversation, a thing that can be deemed a diverting circumstance within the contemplation of the cases cited. In Sanderson v. Railway, 167 Iowa 90, loc. cit. 102, 149 N. W. 188, 192, some of the qualities of diverting circumstances are stated in the following words:

''Before a party can be excused in the doing of that which constitutes negligence, on the ground that his attention was diverted from himself and his peril, there must be some showing of the existence of some fact, condition or circumstance which, under the circumstances usually and ordinarily has the effect of diverting the mind from a vigilant supervision of the physical being placed in and under its control. * * * Ordinarily the mind, through the senses, guards and protects the body, and before we can assume that it was diverted from its purpose, there must be some showing of some fact which usually and ordinarily has the effect to so divert it.''

Consistent with the foregoing is the holding in Dale v. Webster Co., 76 Iowa 370, 376, 41 N. W. 1, 3, in which case the following facts appear: The plaintiff's decedent was observed walking across a long bridge at night reading a letter in the light of a lantern under his arm. Those who made this observation passed on. When nearing the end of the bridge they heard a sound as of breaking glass. They at once turned about. Plaintiff's decedent and his lantern had disappeared. He was found lying on the rocks below the bridge, his skull crushed. He had evidently walked or stumbled through an opening between the spans over the pier where there was no handrailing. The appeal was from a judgment in favor of decedent's administrator. There was a reversal, it being held that the undisputed facts showed that had decedent used ordinary care the accident could not have happened. Although the opinion finds that the letter was found at the foot of the pier, folded, showing that decedent was not reading it at the time of the accident, there is also in the opinion the following with refer-

ence to the reading of the letter being a diverting circumstance: "There was nothing to divert his attention, unless it was the letter which he had been reading, and he read that with premeditation necessarily."

In the case at bar the conversation with Nissly was a natural incident of decedent's purpose and presence upon this highway and was not sufficiently in the nature of something unexpected or distracting as is generally characteristic of diverting circumstances. The conversation was not diverting in the sense that it led the mind astray from the thing in hand, but rather the necessity of crossing the highway over into the cornfield was something inherent in the conversation itself. It was to cutting corn on the other side of the road that the conversation pertained. In view of the surrounding circumstances it would not seem to be within reason to hold that the mind of an ordinarily prudent person would usually or ordinarily be diverted or distracted on account of a conversation of such a nature, premeditated or to be contemplated by decedent as a part of his mission at the place where he was. In arriving at this conclusion the surrounding circumstances, that is, the elements of the perilous situation as already described are taken into consideration, as included in above quotation from the Sanderson case, because when he is in a situation clearly threatening great peril the mind of an ordinarily prudent person would not usually or ordinarily be diverted from a vigilant supervision of his physical safety by reason of so-called distracting facts or circumstances of the nature of those presented in this case. There was no suddenness or unexpectedness, nor any distracting thing, as for instance, a new peril revealed necessitating its quick avoidance. In view of all the circumstances and the nature of the conversation, we are constrained to hold that appellant has not shown diverting circumstances that would warrant the jury to find that plaintiff was excused from his negligence. We find no error in the sustaining of defendant's motion for a directed verdict. The case is affirmed.—Affirmed.

PARSONS, C. J., and ANDERSON, HAMILTON, STIGER, DONEGAN, KINTZINGER, MITCHELL, and ALBERT, JJ., concur.