**Dorothy A. Spencer, b.n.f. Frank Spencer v. John C. Fondry**

[167 A.2d 372]

September Term, 1960

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed November 1, 1960

Motion for Reargument Denied January 3, 1961

*C. O. Granai* for the plaintiff.

*John H. Downs* for the defendant.

**Hulburd, C. J.** The plaintiff brings suit for injuries sustained by her when she was struck, while riding horseback, by a motor vehicle operated by the defendant. At the trial below, the verdict went for the plaintiff, but on the defendant's motion, the trial court entered judgment for the defendant notwithstanding the verdict. As a result, the plaintiff comes here on appeal.

On July 15, 1956, at about eleven o'clock in the morning, the plaintiff started out on horseback to visit her uncle who lived about a mile away. To reach his house, she had to travel along a rough country road. Its surface was dirt and it was stony in places. It was a road with which the plaintiff was thoroughly familiar. The horse, upon which the plaintiff was riding, was one on which she had ridden many times before and so had her smaller brothers and sisters. The plaintiff, herself, at the time of the accident, was fourteen years old. The horse was gentle and not afraid of automobiles and the plaintiff was riding him bareback at the time. In the course of the trip, the plaintiff reached a curve or "corner" in the road. It was slightly down grade, and, at this point, the plaintiff was walking her horse in the ditch along the left hand side of the road. She did this because the footing was softer there and it was easier on her horse's feet. As she was rounding the curve on the inside, in the ditch, the defendant's automobile suddenly bore down on her. The plaintiff tried to get her horse onto the bank at her left, but, before she could do so, the defendant's motor vehicle struck the horse in the chest, throwing the plaintiff to the ground over the car. The road at the point of collision was about eighteen feet wide. Photographs were introduced in evidence showing the nature of the road, the ditch, the banks on either side, and the visibility in the area where the accident occurred. The ditch was almost flat, without much of a rise toward the road. The one nearly merged with the other. As a result, a car "hugging the curve" might be subject to some temptation to allow the wheels on the ditch-side to go along in it. The point of collision in this ditch was indicated on the pictures. The defendant testified that when he first saw the plaintiff and her horse, she was ten to fifteen feet away. When this testimony is considered in connection with

the photographs, and the other evidence in the case, we are bound to say that the jury would have been justified in finding that the defendant was negligent in failing to discover the plaintiff's presence sooner than he did. There is an inescapable inference of negligent inattention by the defendant: a proper look-out for other users of the highway was not maintained. On the question of the defendant's speed, we feel that we should mention all three references in the evidence on this subject. It is not without purpose that we do this. . The defendant claimed he was going ten to fifteen miles an hour as he rounded the curve just before the accident. The plaintiff estimated the defendant's speed at forty to forty-five miles an hour. Witness Reed, called by the defendant, stated, "considering the curve, he was coming pretty fast." Witness Reed was a man who was operating a car which met the defendant just prior to the accident. As the defendant put it, "Just as I was going into the curve, he went by me." Reed, himself, testified that when he last saw the girl in his rear view mirror she was about one hundred feet behind him. After that, his view was cut off by the curve in the road just before the accident.

 With the evidence being as we have stated it, the defendant moved for a directed verdict. This motion was denied. In submitting the case to the jury, however, the trial judge told the jury that the plaintiff was guilty of contributory negligence as a matter of law "in proceeding down on her left hand side of the road." He limited all. possibility of recovery by the plaintiff to making out a case under the doctrine of last clear chance about which he went on to charge the jury. Under this submission, the jury brought in a verdict for the plaintiff. Thereafter, the trial judge apparently had further thoughts about the case, and upon motion of the defendant, entered judgment for him notwithstanding the verdict. It is the trial court's action in this last regard which the plaintiff has briefed for our consideration. Neither party has briefed any objection to the way the case was submitted to the jury. This means that we are not in a position to pass on the ruling that a fourteen year old girl is guilty of contributory negligence as a matter of law when she rides her horse in the ditch along the left hand side of the road. Our question, therefore, is: did the doctrine of last clear chance, in the circumstances, afford the jury an adequate basis for its verdict? Putting it otherwise, the ultimate

inquiry may be said to be: with the negligence of both the plaintiff and defendant assumed, was there a time when the defendant could and the plaintiff could not, by use of the means available, avert the accident? If so, the negligence of the defendant in not averting the accident, after the peril is or should have been discovered, becomes the sole efficient cause of the injury, and the plaintiff is entitled to recover. *Shea* v. *Pilette,* 108 Vt. 446, 456, 189 A. 154, 109 A.L.R. 933.

Taking the defendant's own testimony as to his rate of speed, namely, ten to fifteen miles an hour, we think on the evidence before them, a jury would be justified in finding that, at that speed, had the defendant discovered the plaintiff's peril as soon as he should have, he would have had ample time and distance to turn aside, and thus avoid running the plaintiff down. The defendant argues, however, that the plaintiff had an equal opportunity to do the same thing and that this opportunity was coextensive, at least, with that of the defendant. In short, that the situation didn't give the defendant a later opportunity—that he didn't have the last clear chance to avoid the accident. If this is so, of course, there can be no liability on the part of the defendant. See 65 C.J.S. at p. 774 and cases cited in note 47.

It is on this point that the defendant has an awareness of the importance of the Reed car as a factor. With this we agree. The approach of the Reed car, the defendant argues, prevented the defendant from turning aside and thus avoiding the accident. We think a jury would have been justified in finding otherwise. When the time came that the defendant could and should have seen the plaintiff and should have turned aside, the Reed car had been met and passed. It had ceased to be an obstacle to making this move. On the other hand, a jury would be justified in finding that the plaintiff, had she decided to cross over to the other side of the road, could not have done so at the very time which might well have been her last opportunity to avoid the accident. The Reed car, in going by, made it impossible for her to get onto the other side of the road at the critical moment. We think that a jury might have so found on the evidence before it. It is to be remembered that the Reed car and the defendant met just as the defendant began to enter the curve. It is doubtful that the plaintiff, moving relatively much slower, would have had time to maneuver her horse across the road to the right side after the Reed car had gone

by her. Thus the jury may well have concluded that she had no opportunity to extricate herself from her position of peril, while the defendant could well have managed to do what the circumstances denied the plaintiff. It was a close determination, perhaps, but one which the jury was entitled to make.

The defendant has argued that this is the sort of case to which the doctrine of last clear chance ought not to be extended. It is, he says, an occurrence where the peril of the plaintiff was not actually discovered and one in which the defendant owed no duty to be looking out for danger. He likens the situation to the railroad cases where a person is on the railroad track at a point other than at a regular crossing. He argues that the doctrine is not properly applicable in such circumstances. It has been so held in many jurisdictions. The analogy, however, is not well taken. The defendant had no exclusive right to the use of the highway as a railroad has of its track between crossings. He enjoyed this right in common with others, and he was under a duty to watch for other users, especially those using the highway where he proposed to travel. It is perfectly apparent that had the plaintiff been riding in the opposite direction—and so proceeding on her right hand side of the road—she would have met the same fate that she did, only she would have been struck down from the rear instead of head-on. The duty to maintain a lookout in the circumstances was not absent as urged by the defendant. The defendant cannot escape the operation of the doctrine of last clear chance on this account. We think a very genuine duty rested on the defendant to discover the plaintiff in the peril which the defendant was helping potentially to create, and that the jury was justified in finding that this duty was not met by him, and further, that had it been, the defendant could have averted the accident as we have indicated.

This disposes of all the defendant's contentions unless it is that we should overrule all our cases to the contrary and hold that the defendant can be charged only with what he saw, not with what he might have seen. The defendant has quoted Prosser on Torts, 2nd Ed. page 295, to the effect that holding as we have in our cases, we are accepting the "* * * obvious fiction which says that negligent inability to have the last clear chance is the same thing as having it."

To this might be added the criticism voiced in *Keller* v. *Norfolk & Western Ry. Co.,* 109 W. Va. 522, 156 S.E. 50, 52 as follows: "The logic of the doctrine of the last clear chance calls for actual knowledge so that impending injury may be averted. Imputed knowledge affords no such clear chance. Why, indeed, should knowledge be imputed to the defendant without also imputing it to the plaintiff? Why mete out a measure to one litigant different from that to the other? Why should justice thus discriminate? Is the duty of one to preserve himself from injury less than the duty of another to so preserve him?" It is not easy to disregard the force of this reasoning. We can only say that in these days of disaster on the highway, by permitting constructive knowledge to be sufficient under the doctrine, we are maintaining in the law a wholesome deterrent to inattention in the operation of motor vehicles. Under present conditions, it is no time to relax any requirement of the law which might help to lessen the number of avoidable accidents. We feel no inclination to overrule or restrict our previous holdings on this subject.

It follows from what we have said that the county court, having submitted the case to the jury on a last clear chance basis, was in error when it entered judgment for the defendant notwithstanding the verdict for the plaintiff.

*Judgment reversed and judgment for the plaintiff.*

## On Motion for Reargument

**Hulburd, C. J.** The defendant has moved for a reargument on the ground that we have "misapprehended an important fact." Such a motion calls for re-examination of the transcript, perhaps, rather than a reargument. We have made the re-examination. The defendant is troubled because the opinion holds that the jury was entitled to infer from the evidence that the Reed car passed the plaintiff just before the defendant came around the bend and struck the plaintiff. The defendant calls attention to the fact that the plaintiff did not testify that witness Reed's car passed her in this way. But the matter does not rest there.

The plaintiff testified that Reed left her home five to ten minutes before she did and that she never saw him again prior to the accident. Of course, with the scene of the accident about one-half mile away,

and with Reed traveling at the rate of fifteen to twenty miles an hour in his car, it is unreasonable to assume that, if the plaintiff, riding on horseback, was behind Reed, she would have been able to catch up to him if he had any head start at all. Horses ordinarily don't overtake automobiles. The question at once arises, was the plaintiff right in thinking that Reed left the farm ahead of her. When we turn to the testimony of both Reed and the defendant, we find it clearly tended to indicate that the plaintiff may have been wrong, for the testimony of both puts Reed coming around the corner just ahead of the plaintiff before meeting the defendant. Reed said he was watching the plaintiff in his rear-view mirror as he went around the bend just before meeting the defendant. Of course, if the plaintiff was visible to Reed and only one hundred feet away, Reed was visible to the plaintiff. Either the plaintiff's observation of what the Reed car did or where it was was imperfect, or her recollection was inaccurate.

Reed did not testify that he left the farm ahead of the plaintiff. His testimony was that he was not sure who left first, that he could not recall about that. Reed was not asked whether he temporarily stopped along the route. Thus the order of departure of the Reed car and the plaintiff from the farm did not give rise to a necessary inference as to their later relative positions on the road.

The evidence, therefore, was contradictory and confused and the trial court called this fact directly to the attention of the plaintiff, who, it must be remembered, was a young girl. She was thereupon asked a further question by counsel for the defendant: "You do remember Mr. Reed taking his car up to the scene of the accident?" To this question, the transcript indicates the plaintiff made no answer, and the defendant did not press for one.

■■ As the evidence stood, we think that it gave the jury a valid basis for drawing any one of several inferences, and one such was that the Reed car passed the plaintiff just prior to the accident, following which Reed saw the plaintiff in his rear-view mirror before rounding the curve. On review by us, we are required to give the appellant the benefit of this inference. *Partridge* v. *Cole,* 96 Vt. 281, 285, 119 A. 398, 32 A.L.R. 854. It is not our province to resolve inconsistencies in the evidence. Contradictions and opposing inferences were for the jury. *Johnson* v. *Hardware Mutual Casualty Co.,* 109 Vt. 481, 492, 1 A.2d 817. Doubtless counsel for the defendant may

feel that the evidence might better be viewed in another light. The opinion, as written, gave the plaintiff the benefit of those inferences which the jury might properly draw. This is not to say that they were necessarily the most reasonable ones. There was no misapprehension at the base of the Court's opinion.

*Motion for reargument denied.*