Strafford,
No. 5165.

DORIS V. COUTURE

*v.*

NORMAN LEWIS.

Argued November 5, 1963.
Decided December 30, 1963.

*Fisher, Parsons, Moran & Temple* (*Mr. Robert H. Temple* orally), for the plaintiff.

*Burns, Bryant & Hinchey* and *E. Paul Kelly* (*Mr. Kelly* orally), for the defendant.

BLANDIN, J. The parties agree that the sole question is whether the doctrine of last clear chance applies.

To warrant the submission of this issue, "there must be evidence from which the jury might find the following facts: 1. That the one to be charged with the liability was actually aware of the other's presence. 2. That he was actually aware that the other was either ignorant of the peril or unable to extricate himself from it. 3. That, after discovery of the situation,

due care required and time afforded an opportunity for saving action." *Clark* v. *Railroad,* 87 N. H. 36, 38; see also, *Hamlin* v. *Roundy,* 96 N. H. 123, 124.

As with many rules in the law of torts, it may be observed that the simplicity of this one is only exceeded at times by the difficulty of its application. At first impression, such might appear to be the present case, but upon analysis we believe that the situation becomes reasonably plain.

Construing the facts most favorably to the plaintiff, the jury could find the following: The plaintiff, Doris V. Couture, on a summer day was traveling south on paved Route 16 in Somersworth toward Dover at 25 miles per hour. The defendant, Norman Lewis, was coming north from Dover on the same road at 40 miles per hour. It had been drizzling during the day and the road was wet. At the scene of the collision the highway was nearly straight, but there were curves at either end of the straight stretch. The view along the stretch from curve to curve was something less than 325 yards, but more than 300. After the plaintiff came around the curve, she saw the defendant on her side of the road. The plaintiff then pulled over to her own right, or to the westerly side of the highway, so that her wheels were on the soft shoulder. Then she turned back onto the road, crossed slightly over the center into the defendant's, or northbound lane, veered back to her right and onto the west shoulder, along which she proceeded for 20 yards, and then "shot right across" the center line and into the defendant's lane, where the cars collided. The defendant, after he came off the curve at the southerly end of the straightaway, saw the plaintiff turn to her right, then follow the course above described until the accident occurred. There are estimates by the parties, varying from 100 yards given by the defendant to some 300 yards,. testified to by the plaintiff, of the distance between the cars when the drivers first observed each other. With the two vehicles swiftly approaching each other, it is a matter of common knowledge that such estimates are largely speculative and usually unreliable—this is especially so in comparison with actual measurements. *Johnson* v. *Director-General,* 81 N. H. 289, 291, 292; see *Legere* v. *Company,* 89 N. H. 423, 425.

The plaintiff's only witness aside from herself, on the issue of liability, was a police officer who had made some measurements and a diagram of the scene. A physical fact, which is

undisputed and appears indisputable, is that according to the officer the plaintiff, by actual measurement, traveled approximately 50 yards from the time she first pulled off onto the westerly soft shoulder and until the crash. *Brown* v. *Mailhot*, 89 N. H. 240. The officer could not be sure whether he measured the 50 yards straight along the road or by following the curving course of the car. His diagram traced in a dotted line the plaintiff's course, and on it he wrote: "Car No. 1 [the plaintiff's] went 50 yards from the start to where they collided." If the measurement referred to actual distance the plaintiff traveled, then the straight line would be somewhat less than 50 yards. If it referred to the straight line distance, then the actual space traversed by the plaintiff would be somewhat more than 50 yards. However, in the face of the indisputable physical facts, it could not have been substantially more.

The lowest speed at which anyone estimated the plaintiff's car was traveling was 25 miles per hour. The only estimates as to the speed of the defendant's automobile were 40 to 45 miles per hour. Thus the two were approaching each other at approximately 100 feet per second. Although there was evidence that the defendant applied his brakes, there is no evidence that the plaintiff applied hers at any time before the cars collided.

On the record the jury could not reasonably conclude that when the defendant first saw the plaintiff pulling off the road, "very slowly," as she puts it, onto her own side, he should have become "instantly aware" that she was in peril, either ignorant of it or unable to extricate herself from it, and that he alone could save her. *Clark* v. *Railroad*, 87 N. H. 36, 38. See also, *Hamlin* v. *Roundy*, 96 N. H. 123. There is no testimony as to how far she traveled on the shoulder the first time she went onto it before turning back onto the road again. All we have in addition to the total space of 50 yards covered is the measurement by the officer that the second time she turned off onto the westerly shoulder, she went along it for 20 yards before she drove back onto the highway and into the defendant's lane. In any event, at 25 miles per hour she would have traversed the entire 50 yards from the time she first pulled slowly off the road and up until the crash in approximately four seconds.

Should the jury have found that the defendant became actually aware both of the plaintiff's peril and her inability to help herself when, after going off the road the first time, she started to come back into her lane, there would then have been a specu-

lative and indefinite period of less than 4 seconds in which the defendant would have had to take saving action.

"The last chance must be a clear one, reasonably found to be fairly given." *Morrison* v. *Railroad*, 86 N. H. 176, 180. The words "last clear chance" mean exactly what they say "there must be a *clear opportunity* to avoid the accident . . . ." *Ramsdell* v. *Company*, 86 N. H. 457, 462. See also, *Lavigne* v. *Nelson*, 91 N. H. 304, 309. The burden was on the plaintiff to prove such a clear opportunity was actually given to the defendant. *Hamlin* v. *Roundy*, 96 N. H. 123, 125; Annot. 159 A.L.R. 724.

In the present situation, the cars were approaching each other at nearly 100 feet per second. The plaintiff's car, coming on with unslackened speed, was swerving off and then back onto the road and across the center lane. What its next move might be was pure guesswork. *Ramsdell* v. *Company*, *supra*; *Morin* v. *Morin*, 89 N. H. 206. Faced with this situation, it seems that the defendant would have required the lightning reactions of a Sonny Liston to grasp the peril and act, and the judgment of a Solomon to know what action to take to avoid the collision.

The last clear chance doctrine is a sensible and salutary one, but it should not be converted into an umbrella to shelter every plaintiff from the storm caused, in part, at least, by his own conduct. In its application, the innumerable precedents in this state and other jurisdictions are of little value. The principle "has reference only to the existing situation." *Lavigne* v. *Nelson*, 91 N. H. 304, 309. Each case must depend upon its own particular facts.

Authorities cited by the plaintiff, such as *Martin* v. *Kelley*, 97 N. H. 466, a pedestrian situation, and others, are distinguishable in their circumstances from the present case and do not support the plaintiff's position here.

In summary, on the record before us, we perceive no reasonable basis for a conclusion that the defendant, after he discovered the plaintiff's peril and that she was unable to save herself, had a clear opportunity to avoid the accident. Her exceptions are therefore overruled. *Hamlin* v. *Roundy*, 96 N. H. 123.

The order is

*Judgment on the verdict.*

All concurred.