**Dexter ACKERMAN, As Next Friend of Steven Ackerman, and Individually, Appellants,**

**v.**

**Donald Lee JAMES, Jr., Appellee.**

**No. 54984.**

Supreme Court of Iowa.

Sept. 19, 1972.

William C. Ball, Waterloo, for appellants.

Swisher & Cohrt, Waterloo, for appellee.

MASON, Justice.

This is a law action based on negligence in which the trial court directed a verdict for defendant at the close of plaintiffs' evidence. Plaintiffs appeal from the judgment entered thereon.

In one division of the petition Dexter Ackerman as next friend of his minor son claims damages for personal injuries sustained by the minor, a pedestrian, when struck by an automobile owned and being driven by defendant, Donald Lee James, Jr. In another division, Ackerman individually and as father of the minor seeks recovery for loss of his son's services during minority and for expenses incurred by him during that period by reason of the injuries.

Defendant in answer admitted ownership and operation of the motor vehicle involved, the striking of the minor at the time and place alleged and denied all other allegations. In separate divisions defendant pled as a further defense that the minor was negligent in specified particulars and that such negligence was a proximate cause of the injuries. Plaintiffs in reply denied this affirmative defense.

Before commencement of trial plaintiffs amended their petition seeking to rely upon the doctrine of last clear chance as a basis for recovery under each cause of action. Defendant moved to strike the amendment alleging the doctrine of last clear chance is without vitality and no longer applicable in view of the enactment of what is now section 619.17, The Code.

The change brought about by this enactment, effective July 4, 1965, provides that when defendant relies upon negligence of plaintiff as a complete defense or bar to plaintiff's recovery, defendant has the bur-

den of pleading and proving negligence of plaintiff, if any, and that it was a proximate cause of the injury or damage.

Defendant's motion in resistance had not been ruled upon at the close of plaintiffs' case.

In one phase of its ruling directing a verdict for defendant, the court expressed the view the evidence established as a matter of law that defendant had sustained his burden of proving the minor's negligence was a proximate cause of the injuries and concluded reasonable minds could not differ on the question where defendant's vehicle was approaching in plain sight before the injured minor undertook to cross the roadway.

In the other phase of its ruling the court, in referring to defendant's motion to strike the doctrine of last clear chance as alleged by plaintiffs, stated: "Without deciding the issue tendered by defendant's motion the court concluded that even if the doctrine of last clear chance were deemed to apply in this case the facts taken in the light most favorable to plaintiffs simply fail to make out a case for the use of the doctrine."

Approximately 3:00 p. m. July 6, 1969, 15-year-old Steven Ackerman was crossing on foot to the west side of Black Hawk County Road E, a north-south road, at a point south of the south city limits of DeWar, when struck by defendant's north-bound automobile.

We are told in the record county road E approaches DeWar from the south and cuts a swath through rolling countryside. At the location of the accident there are two hills and their crests are one-quarter to one-half mile apart. Proceeding north to within 1200 feet of the accident scene, an automobile goes down the first or most southerly of the two hills and thereafter travels up the second hill a distance of about 700 feet to the scene of the accident, which was approximately 30 yards south of the crest of the second or most northerly hill.

The afternoon of the accident Steven Ackerman walked a quarter of a mile south from his home to the home of Glen Adamson. The two boys listened to records for a period of time at the Adamson home, then crossed the county road to the Niedermann residence where they were joined by Gene Niedermann, also 15.

There is a conflict in the testimony as to just what transpired during the short time spent at Niedermann's before the three boys decided to go back across the highway to the Adamson home. It had rained earlier in the afternoon and was misting at the time.

Steven testified that as he and the two boys started from the south side of the Niedermann house and went to the front, he was ahead of the other two; when he approached a point about six feet from the east edge of the highway, he turned his head and looked to the left and right, did not see or hear anything and proceeded to cross the highway at a northwest angle headed toward the Adamson driveway. Young Ackerman describes his pace at the time of going onto the highway as "brisk," a little faster than a steady walk but not quite a trot. He said when he was close to the centerline one of the boys yelled, "Ackerman, a car," he quickly turned and glanced to the south, saw defendant's automobile about ten feet away and was unable to move before being struck at a point about two or three feet west of the centerline. The paved portion of the highway at this point is an estimated 18 to 20 feet wide.

The Adamson and Niedermann boys were both Ackerman's friends at the time of the accident but since then they have had problems and Ackerman does not chum around with them any more.

Gene Niedermann, called as a plaintiffs' witness, testified he first saw Steven Ackerman around noon the day of the accident

when Ackerman was walking from DeWar. Niedermann said he talked to Steven at the Adamson home before the three boys crossed the road to the Niedermann house before the accident. He testified there were firecrackers lit at the Adamson house and at the Niedermann house, that he lit a firecracker and Steven threw it in a puddle of water a few feet behind David Van Hyfte's car parked in the Niedermann driveway and that Steven then started for the highway without stopping.

Hereinafter in this opinion statements as to north and south distances relate to a common reference point located in the center of Niedermann's driveway.

As the three started back to the Adamson home Niedermann said his attention was directed to defendant's car by the sound of its horn when it was about 700 feet south. He estimated the car was then traveling 60 to 65 miles per hour. According to his version, Ackerman was on the highway at that moment east of the centerline but closer to that line than the east edge of the pavement. At the time Adamson yelled, "Hey Ackerman, there is a car coming," Steven was not quite across the yellow line. Niedermann said as the driver hit the car brakes, the car dipped at a point approximately 150 feet south. He placed the point of impact about a foot west of the centerline and the point where the James car came to rest approximately 120 feet north of the reference point.

Niedermann insisted neither he nor Adamson went onto the highway. He estimated Steven was about a foot west of the centerline when struck by the James car which was then traveling 45 to 50 miles per hour. The posted limit on the road involved is 60 miles per hour.

Plaintiffs offered parts of defendant's deposition. Rule 144, Rules of Civil Procedure. James described the day as overcast, it had either stopped raining or there was a very slight sprinkle and visibility was limited by the gray sky. Defendant estimated his speed at 50 miles an hour as he proceeded north on the DeWar blacktop to the scene of the accident. He was familiar with the area. When he was about 525 feet from the point of impact, James saw three boys walking toward the DeWar road approximately 10 feet from the edge of the asphalt, Ackerman being about two feet in front of the other boys. When he saw the boys approaching the highway, defendant let up on the accelerator and started to slow down. James maintains all three boys upon reaching the edge of the road began running to the west side.

When he was approximately 450 feet south, defendant honked his horn. All three boys stopped two to three feet from the centerline, turned their heads and shoulders, looked and faced him. All three turned to the left and started back at a half run to the east edge of the road toward the Niedermann driveway. Two of the boys went all the way back to a point about three feet off the road but Steven stopped about "where your rights wheels would track in the east lane of the road, about two to two and a half feet from the east edge." When about 175 to 200 feet from Ackerman defendant applied his brakes since he wasn't sure what Steven was going to do. Defendant claims Ackerman stopped about 50 to 60 feet away from the car which had then slowed to approximately 30 to 35 miles an hour, faced him and began a feinting motion shifting his shoulders and hips. Defendant then applied his brakes as hard as he could without locking them and turned to the left of the centerline. James testified that as Ackerman darted out in front of his car, he locked his brakes, turned the wheel to the right and his car started skidding. It struck Ackerman with its left front side and pushed him to the side of the road as the car slid about 20 feet past him.

Steven, as a witness, had denied hearing the horn or engaging in any feinting body motions as described by James.

David Van Hyfte, 18, had known Steven Ackerman two or three years. He was at

the Niedermann home when Steven was there. His first knowledge of the accident was when Murilla Adamson came running around the corner of the house and said "Steve got hit." Van Hyfte went over to where Steven was lying in the ditch. James came across the road and said he was sorry and "he didn't—he couldn't see him or something like that."

A commercial photographer was called to identify the various pictures. Dexter Ackerman described the events after his arrival upon being notified of the accident. He testified he talked to defendant and asked him how fast he was going when he hit Steven and James said "approximately 50 miles an hour." Vera Ackerman, Steven's mother, told of talking with the defendant as he stooped over Steven in the ditch. She asked him how fast he was going when he hit the boy and the defendant said "about 50 or 60" and that "he couldn't stop; he could see him but he couldn't stop."

At this point plaintiffs rested. Defendant's motion for directed verdict and the court's ruling sustaining the same followed.

Plaintiffs rely upon three errors for reversal by asserting the trial court erred: (1) in directing a verdict for defendant for the reason the minor was not contributorily negligent as a matter of law; (2) in concluding the facts failed to warrant application of the last clear chance doctrine; and (3) in admitting certain hearsay testimony.

The assignments of error will be considered other than in the order presented.

I. At trial plaintiffs' witness, David Van Hyfte, was cross-examined by defendant's counsel and the following record was made:

"Q. Now, following this accident did you see or hear Gene Niedermann and Glen Adamson [Steven's companions] talking about how it happened? A. Yeah.

"Q. Did you hear them having a discussion about whether Steve had gone out on

the road and had come back and then gone out on the road again and was hit? * * * [Plaintiffs' counsel]: I am going to object as calling for hearsay. THE COURT: Overruled. He may answer. A. Yeah, I heard it.

"Q. Now what was this? Describe for the jury what it was you heard and what it was they were talking about. A. Glen was saying that Steve ran out in the road, either backed out or ran out, I don't remember that for sure, and then turned and then went again, or something like that, you know. They yelled at him and that's when he stopped and then he thought he was going to make it back and then he didn't and then he tried to make it the other way. That's what I remember."

On appeal plaintiffs urge reversible error in the admission of the above testimony. Defendant contends plaintiffs waived objection to the last portion of the testimony, since no timely objection was made and no standing objection had been requested earlier. Plaintiffs' objection of "hearsay" was made only in response to a question calling for a "yes-no" answer on whether the witness had heard a discussion. While that question was a pregnant one, and certainly leading as is permitted on cross-examination, an affirmative answer to it would not establish the substance of the conversation but only that the witness had heard the boys talking about Steven's actions on the road.

■ Defendant's point is well taken. The question to which plaintiffs specifically objected was not hearsay. In State v. Smith, 195 N.W.2d 673, 675 (Iowa 1972), we quoted rule 801, Proposed Rules of Evidence for the United States Courts and Magistrates, which defines hearsay in this manner:

"(a) Statement. A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.

"(b) Declarant. A 'declarant' is a person who makes a statement.

"(c) Hearsay. 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

" * * *."

The omitted portion of the quoted rule deals with statements which are not hearsay.

The damaging testimony which followed was admitted without objection. In Sallee v. Routson, 247 Iowa 1220, 1222–1223, 78 N.W.2d 516, 517, quoting from 88 C.J.S. Trial § 150, the Iowa court said: " 'Evidence to which no objection is made is properly in the case for all purposes and may be considered, although it would have been excluded had objection been made; such evidence is entitled to its full and natural probative effect'; * * *. This general rule is recognized and followed in Iowa. * * *." See also Punelli v. Punelli, 260 Iowa 549, 555, 149 N.W.2d 784, 788; State ex rel. Fulton v. Scheetz, 166 N.W.2d 874, 882 (Iowa 1969); Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 660–661 (Iowa 1969); Jones v. Jones, 175 N.W.2d 389, 391 (Iowa 1970); Annot., 79 A.L.R.2d 890.

■ Objection to the first question was properly overruled; no other objection was made. There is nothing else preserved for consideration. There was no effective standing objection.

II. In another assignment plaintiffs challenge the court's ruling directing a verdict for defendant.

As previously noted the trial court took the view the evidence establishes as a matter of law defendant had sustained his burden of proving the minor was negligent and that his negligence was a proximate cause of the injuries as asserted in his separate affirmative defense and that reasonable minds could not differ on the question where defendant's vehicle was approaching in plain sight before the minor undertook to cross the roadway.

■ Ordinarily the question of plaintiff's contributory negligence is for the jury's determination and only in exceptional cases does a party having the burden of proof on an issue establish it as a matter of law. Frideres v. Lowden, 234 Iowa 640, 642, 17 N.W.2d 396, 397; Clubb v. Osborn, 260 Iowa 223, 230, 149 N.W.2d 318, 322; Hedges v. Conder, 166 N.W.2d 844, 854 (Iowa 1969); Sauer v. Scott, 176 N.W.2d 140, 145 (Iowa 1970); Sherwood v. Nissen, 179 N.W.2d 336, 340 (Iowa 1970); Ives v. Swift & Company, 183 N.W.2d 172, 177 (Iowa 1971).

■ Specifically, contributory negligence will be decided as a matter of law only in the exceptional case in which such negligence is so palpable, flagrant and manifest that reasonable minds may fairly reach no other conclusion. Giarratano v. The Weitz Co., Inc., 259 Iowa 1292, 1309, 147 N.W.2d 824, 835; Pastour v. Kolb Hardware, Inc., 173 N.W.2d 116, 124 (Iowa 1969); Ives v. Swift & Company, 183 N.W.2d at 176; rule 344(f)(10), R. C.P.

In ruling on a motion for directed verdict, the court views the evidence in a light most favorable to the party against whom the motion is made. Schneberger v. Glenn, 176 N.W.2d 782, 784 (Iowa 1970); Andrews v. Struble, 178 N.W.2d 391, 397 (Iowa 1970); rule 344(f)(2), R.C.P.

This is true even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered. Rule 344(f)(17), R.C.P. This proposition is recognized in Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d at 642, where we quote these statements of law articulated in cases cited in that opinion:

" 'The determination of the existence of negligence where the evidence is conflict-

ing or the undisputed facts are such that fair-minded man may draw different conclusions from them is a question of fact for the jury and not one of law for the court.'

" * * *

" ' * * * [E]ven though it is known what was done by that individual in this regard, yet, if his conduct is such that there may fairly be different opinions with respect to it, and one man honestly and reasonably says it was in accord with ordinary prudence, while another just as sincerely and with equal reason contends it was not, then there is a jury question.' "

Defendant specifically alleged in the divisions of his answer setting forth his affirmative defense that the minor was negligent in failing to yield the right of way in violation of section 321.328, The Code, and this negligence was a proximate cause of his injury. This section provides in part:

"Crossing at other than crosswalk. Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway except that cities and towns may restrict such a crossing by ordinance.

" * * *."

This court has held violation without legal excuse of section 321.328 is negligence per se. Hedges v. Conder, 166 N.W.2d at 850–851; Stewart v. Hilton, 247 Iowa 988, 993–994, 77 N.W.2d 637, 640.

Whether it appears as a matter of law in light of the principles stated, supra, that the minor violated section 321.328 as the trial court obviously ruled is another question.

Section 321.328 charges the pedestrian with a duty to yield by exercising ordinary care when attempting to cross at an unmarked point. Sheridan v. Limbrecht, 205 Iowa 573, 576–577, 218 N.W. 278, 279; Zuck v. Larson, 222 Iowa 842, 845, 270 N.W. 384, 386.

" * * * The general rule is that, to be in the exercise of ordinary care, a pedestrian, at times and places where vehicles may reasonably be expected to be passing, should at some time look for, or make reasonable use of his senses to observe, such vehicles before attempting to cross the street or highway, exercising for his own safety the measure of care that a prudent man would exercise in the same circumstances and proportionate to the dangers involved." 4 Blashfield Automobile Law and Practice, (Third Ed.), section 142.51.

■ It is clear the mere act of attempting to cross a roadway at a place other than a crosswalk is not necessarily negligence. See Spaulding v. Miller, 216 Iowa 948, 952, 249 N.W. 642, 644; Sheridan v. Limbrecht, 205 Iowa at 576–577, 218 N.W. at 279; and section 321.329 which provides in part:

"Duty of driver—pedestrians crossing or working on highways. Notwithstanding the provisions of section 321.328 every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise due care upon observing any child or any confused or incapacitated person upon a roadway.

" * * *."

Section 321.328 places a positive duty upon any pedestrian crossing a roadway and 321.329 imposes a like duty upon any driver of a motor vehicle. Stewart v. Hilton, 247 Iowa at 993, 77 N.W.2d at 640.

Defendant argues that a plaintiff who looks and fails to see what is in plain sight is contributorily negligent, citing Sheridan v. Limbrecht, 205 Iowa at 576, 218 N.W. at 279.

The rule of the cited cases is that a pedestrian will not be heard to say he looked and saw no car when under all the circumstances by looking, he could not have failed to see the car in close proximity to

him. Tobin v. Van Orsdol, 241 Iowa 1331, 1334, 45 N.W.2d 239, 242.

■ However, this does not answer the problem. Evidence bearing on such fact would be relevant to the question of the pedestrian's exercise of reasonable care imposed by the statute but such evidence would not ordinarily establish lack of ordinary care as a matter of law.

■ Although a pedestrian has a duty to keep a proper lookout and make use of all his natural senses to discover the approach of an automobile and to avoid being struck, he is not required to keep a constant lookout and must only apprise the situation with respect to the dangerous approach of an automobile. 3 Blashfield Automobile Law and Practice, (Third Ed.), section 141.46.

The extent of a pedestrian's duty to keep a lookout before entering or crossing a highway is set forth in Lawlor v. Gaylord, 233 Iowa 834, 838, 10 N.W.2d 531, 533:

"The rule of ordinary care does not impose upon a plaintiff pedestrian the burden of keeping a constant lookout for approaching vehicles. * * * [citing authorities]

"We have frequently held his failure to keep a constant lookout or to look again is not contributory negligence as a matter of law. * * * [citing authorities]. This is the rule in various other jurisdictions. 5 Am.Jur., Automobiles, 886, 887. There have been like holdings in cases where the pedestrian was crossing a street at a place other than a regular crossing. Wine v. Jones, supra, [183 Iowa 1166, 162 N.W. 196, 168 N.W. 318]; Wolf v. Reeves, 195 Iowa 610, 192 N.W. 302."

This statement of law was approved in Andrew v. Clements, 242 Iowa 144, 151–152, 45 N.W.2d 861, 865, and reaffirmed in Tillotson v. Schwarck, 259 Iowa 161, 166, 143 N.W.2d 284, 287, where the court said:

"We have held that a plaintiff pedestrian's failure to keep a constant look out, or

to look again, is not contributory negligence as a matter of law. * * * [citing authorities]."

Relevant to a determination of whether the minor was negligent in failing to yield the right of way are the following facts: the victim, Steven Ackerman, is a 15-year-old youth; at the point of the accident, Steven had an unobstructed view to the south of a quarter to a half mile; and Steven was on the highway, moving east to west, about two feet west of the centerline at the point of impact.

Viewing all alternatives, the choices are three: either (a) Steven did not look before going onto the highway, or (b) Steven stopped six feet from the pavement, looked but did not see nor hear defendant approaching, or (c) Steven looked, saw defendant, but stepped onto the highway nonetheless. Under either (a) or (c) Steven would presumably violate his duty to exercise ordinary care. Instead his testimony corresponds to alternative (b), and on those facts he claims not to be negligent.

■ We conclude defendant did not establish the issues presented by his affirmative defense as a matter of law. The question whether the minor was in the exercise of ordinary care when attempting to cross the highway should have been submitted to the jury under proper instructions. The trial court's error in ruling otherwise requires a reversal.

III. The problem presented by plaintiffs' remaining assignment of error involves the trial court's refusal to submit the doctrine of last clear chance as a basis for recovery.

As pointed out, plaintiffs had alleged in an amendment to petition facts embodying the doctrine as an alternative ground for the relief asked.

Defendant filed motion to strike the amendment alleging that: (1) since the enactment of section 619.17, The Code, the

doctrine of last clear chance is without vitality and is no longer applicable; (2) once defendant has sustained the burden imposed on him by this Code section in pleading and proving the minor was negligent and such negligence was a proximate cause of the injury or damage, nothing remains by which plaintiffs may avail themselves of the doctrine; and (3) to impose an even greater burden upon defendant through application of the doctrine by requiring him to twice prove the minor's negligence was a proximate cause of the injury or damage is to violate the legislative mandate of the Code section.

It will be recalled the trial court, without passing on the question presented by defendant's motion to strike, based its ruling denying submission of the doctrine on the ground the evidence taken in the light most favorable to plaintiffs did not make out a case for its application.

Plaintiffs insist the court erred by this adverse ruling because the evidence introduced in support of the allegations of their amended pleading was sufficient to generate a jury question on the issue whether the essential elements for application of the doctrine were present in this case.

The elements requisite for application of the doctrine are set forth in Albrecht v. Rausch, 193 N.W.2d 492, 495 (Iowa 1972), in this quote from Vreugdenhil v. Kunkel, 256 Iowa 460, 466, 127 N.W.2d 630, 633:

"The rule is well settled that the requisites for the application of this doctrine are substantial evidence that 'defendant had (1) knowledge of plaintiff's presence; (2) realization of plaintiff's peril; and (3) the ability to avoid the injury to plaintiff thereafter', and [4] of course failed to do so. (Citations). The defendant must have known of * * * [plaintiff's] presence and had the means and opportunity, by the exercise of reasonable care, to know of his peril and avoid injuring him. While actual knowledge of his presence is required, this knowledge may be inferred from circumstantial evidence, in spite of a denial by defendant. (Citation). Therefore, it is not necessary to show actual knowledge of the danger, but only that it should have been realized in the exercise of reasonable care. (Citations)."

■ The doctrine of last clear chance presupposes plaintiff's negligent conduct placed him in the position of peril. See Dorcas v. Aikman, 259 Iowa 63, 72, 143 N.W.2d 396, 403, and authorities cited.

Although defendant does not concede that the court erred in holding plaintiffs failed to make out a case for application of the doctrine of last clear chance, he initially seeks to uphold the trial court's ruling on the theory the doctrine is without vitality as urged in his motion to strike. Defendant suggests the court was "right for the wrong reason" in refusing to submit the doctrine to the jury.

■ In reviewing a ruling sustaining a motion to strike or dismiss, the same should be sustained if any of the grounds advanced are good, even though the one upon which the trial court based its ruling is not. In re Lone Tree Com. School Dist. of Johnson & Louisa, 159 N.W.2d 522, 526 (Iowa 1968).

In this law action our review is limited to consideration of errors properly assigned. Rule 334, R.C.P.

The error as assigned by plaintiffs involves sufficiency of the evidence to generate a jury question on the presence of the essential elements for application of the doctrine of last clear chance.

Viewing the evidence in the light most favorable to plaintiffs, we conclude that a jury would be justified in finding defendant was at least 700 feet from the point of impact, traveling 60 to 65 miles per hour, when he first discovered young Ackerman and his two companions walking toward the DeWar road.

In his deposition, defendant had said he first saw young Ackerman and the other two boys walking toward the DeWar road

and that as he continued north, he observed all three boys reach a point two to three feet from the marked centerline of the blacktop, turn and start to "half run" back to the east edge of the road. Defendant described in the manner set out, supra, his actions in operating his vehicle as he proceeded to the point of impact.

Reasonable minds might draw different inferences from the facts related whether defendant, with knowledge of the minor's presence on the highway, used ordinary care in exercising the ability at his command to avoid striking young Ackerman after he realized or in the exercise of ordinary care should have realized the minor's perilous position.

■ Evidence bearing on elements embodied in the doctrine of last clear chance should have been submitted to the jury under proper instruction for consideration in determining plaintiffs' right to recover. The trial court erred in ruling otherwise.

Since the trial court's ruling cannot be sustained on the ground announced therein, we look to the grounds urged by defendant in his motion to strike in deciding the correctness of the court's ruling.

Before enactment of section 619.17, plaintiff in a negligence action was required to plead and prove freedom from negligence contributing in any way to the injuries of which he complained. In accordance with the requisites of section 619.17, the defendant now has the burden of pleading and proving the negligence of the plaintiff, if any, and that it was *a proximate cause* of the injury or damage.

Defendant contends in argument as support for his motion these two changes have destroyed the vitality of the doctrine of last clear chance.

Albrecht v. Rausch, 193 N.W.2d 492, 496–497, decided after defendant's brief and argument was filed in this matter, is adverse to the first aspect of defendant's argument. In the Albrecht case the court mentioned that some doubt had been expressed in Duffy v. Harden, 179 N.W.2d 496, 500 (Iowa 1970), whether the doctrine of last clear chance is still applicable in the light of section 619.17 which places the burden of pleading and proving contributory negligence on defendant. In deciding the doctrine was still applicable we said, "the shifting of the burden of proof does not, in and of itself, affect the doctrine of last clear chance. * * * Stated otherwise the question of who has the burden of proof in relation to contributory negligence is irrelevant to the existence of the doctrine of last clear chance."

In Albrecht we recognized the doctrine refers to negligence after negligence and is a phase of proximate cause but did not reach the question whether the requirement that defendant also plead and prove plaintiff's negligence was a proximate cause of his injuries and damages destroyed vitality of the doctrine.

It is the second aspect of section 619.17, The Code, *viz.,* defendant must plead and prove plaintiff's negligence was "*a* proximate cause" of his injury and not merely a contributing cause, that defendant contends obviates any need for a theory of last clear chance. In other words, once defendant establishes plaintiff's negligence was contributory, i. e., *a* proximate cause of his injury, the jury could not conclude defendant's negligence was the sole proximate cause in accordance with the principles of the doctrine of last clear chance.

In at least four cases this court has explained the doctrine of last clear chance as merely a phase of the law of proximate cause. Groves v. Webster City, 222 Iowa 849, 854, 270 N.W. 329, 332; Elliott v. Des Moines R. Co., 223 Iowa 46, 51, 271 N.W. 506, 509; Winegardner v. Manny, 237 Iowa 412–413, 21 N.W.2d 209; and In Re Estate of DeBour, 158 N.W.2d 837, 839.

In Re Estate of DeBour has this statement quoted from Winegardner v. Manny:

"The doctrine applies where a defendant is aware of plaintiff's perilous position in

time to have avoided the accident by the exercise of ordinary care but fails to do so. The doctrine refers to negligence after negligence. It is a phase of the doctrine of proximate cause. The theory is that the later negligence becomes the proximate cause."

The same thought expressed somewhat differently appears in Groves v. City:

" * * * This doctrine presupposes negligence on the part of decedent, * * * [citing authorities], and proceeds upon the theory that notwithstanding his negligence, if the defendant had knowledge of such negligence and of the peril in which the decedent placed himself, it was defendant's duty, after having knowledge of such danger, to stop his car and avoid the accident, if, in the exercise of ordinary care, that could be done thereafter. The doctrine of last clear chance refers to 'negligence after negligence. The theory of it is that the later or last negligence becomes the proximate cause.'"

 It is true these decisions were based on factual circumstances occurring before the change brought about by section 619.17. However, this does not affect their relevancy as an aid in deciding the problem raised by defendant's motion to strike. In our opinion, liability under circumstances where the doctrine of last clear chance is now applied may properly be determined by a legitimate application of the modern concepts of proximate cause.

In several recent decisions we have repeated the definition of proximate cause from Restatement, Second, Torts, section 431:

"The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." See Frederick v. Goff, 251 Iowa 290, 298–299,

100 N.W.2d 624, 629; Federated Mutual Imp. & H. Ins. Co. v. Dunkelberger, 172 N.W.2d 137, 144 (Iowa 1969); and Andrews v. Struble, 178 N.W.2d 391, 398 (Iowa 1970), and cases cited in these opinions.

Justice Brennan, then a member of the New Jersey Supreme Court, said in Pangborn v. Central Railroad Co. of New Jersey, 18 N.J. 84, 101, 112 A.2d 705, 713:

"The best considered decisions properly catalogue the alleged last clear chance doctrine as simply an application of the principle of proximate cause."

Among jurisdictions which have continued to apply the doctrine of last clear chance but construe the doctrine as merely an application of the law of proximate cause are: Yarbrough v. Hovis, 277 Ala. 516, 172 So.2d 782, 783; Odekirk v. Austin, 90 Ariz. 97, 366 P.2d 80, 81; Holman v. Viko, 161 Cal.App.2d 87, 93, 326 P.2d 551, 556; Lambrecht v. Archibald, 119 Colo. 356, 365, 203 P.2d 897, 902; Russell v. Pitts, 105 Ga.App. 147, 151, 123 S.E. 2d 708, 711; Silva v. Oishi, 52 Haw. 129, 131, 471 P.2d 524, 526; Kuhn v. Dell, 89 Idaho 250, 404 P.2d 357; Rohr v. Henderson, 207 Kan. 123, 128, 483 P.2d 1089, 1094; Oddis v. Greene, 11 Md.App. 153, 158, 273 A.2d 232, 236; Dunn v. City of Detroit, 349 Mich. 228, 233–237, 84 N.W.2d 501, 504–505; Gustafson v. Northern Pacific Railway Company, 137 Mont. 154, 157, 351 P.2d 212, 214; Malcom v. Dox, 169 Neb. 539, 541–543, 100 N.W.2d 538, 541–542; Styris v. Folk, 62 Nev. 209, 216, 146 P.2d 782, 786; Couture v. Lewis, 105 N.H. 224, 226, 196 A.2d 60, 63; Exum v. Boyles, 272 N.C. 567, 158 S. E.2d 845; Niday v. Tomasini, 240 Or. 589, 590, 403 P.2d 704, 705; Major v. Grieg, 102 R.I. 379, 388, 230 A.2d 846, 852; Vlach v. Wyman, 78 S.D. 504, 507, 104 N.W.2d 817, 819; Jones v. Knutson, 16 Utah 2d 332, 400 P.2d 562, 563–564; Spencer v. Fondry, 122 Vt. 149, 151, 167 A.2d 372, 374; Borzea v. Anselmi, 71 Wyo. 348, 258 P.2d 796.

The court in Pangborn v. Central Railroad Co. of New Jersey, 18 N.J. at 101, 112 A.2d at 714, quoted at length from Nehring v. Connecticut Co., 86 Conn. 109, 84 A. 301, 303, 45 L.R.A.,N.S., 896, 898–899 (Sup.Ct.Err.1912), in articulating its analysis of the last clear chance doctrine. We repeat a portion of the quotation as pertinent to the problem here:

"* * * The question with respect to negligent conduct on the part of the person injured through the negligence of another as affecting the former's right to recover thus becomes resolved in every case into one as to whether or not that conduct of his was a proximate cause of the injury. If it was, then the contributory negligence rule is applicable, and the plaintiff will by its operation be barred from recovery. If it was not, that rule has no pertinence to the situation, since there was no concurrence of negligence, without which there can be no contributory negligence in the legal sense. It is conduct of the latter kind—that is, conduct careless in itself, but not connected with the injury as a proximate cause of it—to which the so-called doctrine of 'the last clear chance' relates, and that doctrine embraces within its purview such conduct only. This being so, it may well be questioned whether the doctrine deserves a classification and a name as of an independent principle. But if for convenience sake or other reason it is to be dignified in that way, it is apparent that there is no manner of inconsistency between it and the contributory negligence rule, and that the domain of the latter rule is in no way involved or narrowed by a full recognition of it. It follows that the decisive question, in each case where a plaintiff injured is found to have been at fault in the premises from his failure to exercise the required degree of care, resolves itself into one as to whether that fault was or was not a proximate cause of the injury, and that the answer to that question will infallibly determine whether or not it will bar a recovery."

A glance at the citator will give an idea of the frequency with which the Nehring case has been cited.

■ We hold in a personal injury case where the injured party has alleged facts essential to the application of the doctrine of last clear chance as a theory of recovery evidence relating to those facts is admissible as relevant to a determination of the issue of proximate cause. This is so whether the issue relates to defendant's negligence being a proximate cause of plaintiff's injury or to plaintiff's negligence being a bar to his recovery in those cases where defendant has asserted such negligence as a defense in accordance with section 619.17.

■ It would follow that if the trier of fact finds plaintiff's negligence was a proximate cause of his injury, he cannot recover. On the other hand, a finding that defendant's negligence was the *sole* proximate cause of the injuries would be justified where such trier finds plaintiff's negligent conduct placed him in a position of peril and further finds defendant, with knowledge of plaintiff's presence on the highway, failed to use ordinary care in exercising the ability at his command to avoid striking plaintiff after he realized or in the exercise of ordinary care should have realized the plaintiff's perilous position.

We repeat as relevant this statement from Pangborn v. Central Railroad Co. of New Jersey, 18 N.J. at 103, 112 A.2d at 715:

"* * * It is pertinent to observe that the phrasing of instructions to the jury in the language of proximate cause is preferable to the use of the label 'last clear chance' because such language accurately defines the applicable principles, while reference to 'last clear chance' may be confusing."

The grounds alleged by defendant in motion to strike plaintiffs' amended pleading

asserting as a theory of recovery facts for application of the doctrine of last clear chance do not serve as a basis for sustaining the trial court's ruling.

Evidence bearing on the factors warranting application of the doctrine continues to be relevant as bearing on the principle of proximate cause where facts essential to the application of the doctrine have been pleaded.

With directions to the trial court to overrule defendant's motion to strike and to proceed with a new trial in accordance with the Rules of Civil Procedure, this matter is

Reversed and remanded.

All Justices concur except REYNOLD-SON, UHLENHOPP and McCORMICK, JJ., who concur specially.

REYNOLDSON, Justice (concurring specially).

The majority rightly holds the minor plaintiff's age is a relevant fact in determination of his alleged contributory negligence. However, in the same opinion division we find an unrelated reference to cases holding violation of § 321.328, The Code, (pedestrian duties in crossing roadway) is negligence per se. Both cited cases involved adult pedestrians. Similarly confusing in this minor's case is majority's reference to Stewart v. Hilton, 247 Iowa 988, 77 N.W.2d 637 (1956), as authority that § 321.328 "places a positive duty upon every pedestrian." The language of that case should not be extended beyond its facts. The plaintiff in *Stewart* was 55 years old. Assume the plaintiff victim in the instant case were six years old, presumed to be incapable of contributory negligence. See Law v. Hemmingsen, 249 Iowa 820, 89 N.W.2d 386 (1958); Paschka

v. Carsten, 231 Iowa 1185, 3 N.W.2d 542 (1942). Then we could not say he (clearly within the phrase "any pedestrian") had a positive duty. Such treatment of children would be contrary to this court's humanitarian concern for minor pedestrians. See Udell v. Peterson, 257 Iowa 474, 133 N.W. 2d 119 (1965); Webster v. Luckow, 219 Iowa 1048, 258 N.W. 685 (1935).

In Rosenau v. City of Estherville, 199 N.W.2d 125 (Iowa 1972) we noted the tension between the concept that in certain circumstances violation of a statute is negligence per se, and the enlightened rule that conduct of children is to be measured, not by adult standards, but the standard of reasonable behavior in children of similar age, intelligence and experience. See Giarratano v. Weitz Company, 259 Iowa 1292, 147 N.W.2d 824 (1967). In *Rosenau* we unanimously held a child is not ordinarily charged with negligence per se even though his conduct involved violation of a statute which, when violated by an adult, would require application of that rule. We reserved the question whether this principle should apply when the child has engaged in an adult activity, such as driving an auto or flying an airplane. This case does not fall within the reserved area.

It is no answer to say the rationale in *Rosenau* [filed after submission of this case] was not advanced either below or here and therefore has no part in this decision. In this case our sua sponte application of the right rule should be controlled by the issues, not by omissions in counsels' briefs. Nor does it aid the trial judge, burdened with instructing the jury upon remand, to say the child's age is to be considered but also refer to an inconsistent rule which, after *Rosenau*, has no application in this case.

UHLENHOPP and McCORMICK, JJ., join in this special concurrence.